**UNITED STATES of America ex rel. Isiah MACON, Petitioner,**

v.

**Howard YEAGER, Principal Keeper of the New Jersey State Prison, Respondent.**

**Civ. A. No. 605–71.**

United States District Court, D. New Jersey.

Jan. 13, 1972.

Stepacoff, Koch & Kroop, by David I. Stepacoff, Perth Amboy, N. J., for petitioner.

Clinton E. Cronin, Middlesex County Prosecutor, by Terry P. Green, Sp. Deputy Atty. Gen., for respondent.

## OPINION and ORDER

CLARKSON S. FISHER, District Judge.

Isiah Macon, sentenced to a term of not less than two nor more than seven years in New Jersey State Prison, has petitioned this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. 2241 et seq. Macon was convicted of manslaughter in violation of N.J.S.A. 2A:113-5. His appeal to the Appellate Division of the Superior Court was rejected. A Constitutional question having been raised, the matter was heard by the New Jersey Supreme Court and the conviction was affirmed. State v. Macon, 57 N.J. 325, 273 A.2d 1 (1971). That court, however, changed his term of incarceration from seven to ten years to two to seven years. The application for a Writ followed.

The petitioner raised the identical question here presented before the New Jersey Courts and since he has exhausted his remedies before those tribunals, he is properly before this Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); 28 U.S.C.A. 2254.

The facts are disputed in part. All agree that petitioner and a friend of the

victim were involved in a minor traffic accident outside the Triangle Inn in New Brunswick, New Jersey, on May 30th, 1969. The deceased, one Ralph Sasso, came up to the accident scene in another car and involved himself in the discussion. It is to be noted that both he and Macon had been drinking that evening. The witnesses' testimony then divides.

The State's evidence, largely through the testimony of Sasso's companions, indicates that Sasso put his hand on Macon's shoulder and suggested that the accident did not amount to much and should not involve the police. At that, Macon stepped back, drew a gun and shot Sasso twice. As Sasso fell he grabbed Macon and helped his friends attempt to take the gun away. The struggle, as this version goes, continued across the street where Sasso lapsed into unconsciousness and Macon made good his escape.

Testimony for the defendant differs. That version is that Macon decided to return to the Inn to call the police since the driver of the car involved refused to show his credentials. When Sasso interfered, he did so in an aggressive and racially abusive manner, then became physical and punched Macon in the chest twice. Macon then drew a gun to protect himself and to frighten the others off. Sasso profanely rebuffed the threat, leaped at Macon and continued his assault, assisted by several of his friends. In the struggle, the gun fired several times.

It is again undisputed that after the incident Macon and his two companions drove away. He instructed his friends to give no statements and to take no action until he had spoken with his attorney. After then dropping off his companions, Macon drove aimlessly about, threw the gun out the window, and finally parked his car at a place which he later could not remember and walked home. The next morning he telephoned his lawyer and was later arrested. Following petitioner's directions, his companions said nothing.

Petitioner's challenge rests on comments made by the prosecutor to the jury during his summation. Speaking of the actions of petitioner and his friends during the time following the shooting incident, the prosecutor asked the jury:

"Then what does he do? He drives along and can't tell us where. The gun goes out the window. An act of innocence?"

"The car is left somewhere and he doesn't remember where. An act of innocence?"

"He goes home and puts the shirt down in the chest, a torn shirt. Then he goes to bed. He says he had no trouble sleeping. He gets up the next morning and lo and behold, what does he do? *He calls his lawyer. These are acts of innocence?*" (Emphasis added.)

This statement, the petitioner claims, prejudiced him in his exercise of his right to counsel, and for that reason he believes he is entitled to habeas corpus relief. For that relief to issue, it is incumbent upon this court to find that the objectionable remarks are both constitutionally significant and prejudicial within the context of this case. After an exhaustive and searching review of both the record and relevant authority on point, the Court concludes, for the reasons to be set forth below, that constitutional error was committed but the effect on the trial was not sufficiently prejudicial as to require the granting of petitioner's request for the Writ.

■ No real purpose is served here by a detailed and lengthy exposition of the background of the Constitutional guarantee of the right to counsel. This right is among the greatest of the Constitutional safeguards of personal freedom. Set forth originally in the Sixth Amendment, the right to counsel has since been expanded by nearly two centuries of judicial precedent. Its importance to the individual who stands accused before the bar is both precious and crucial. Any abrogation of the

right to counsel which would curtail the rights of an individual by impairing the fairness of a trial, should not and must never be viewed lightly.

In the case before this Court, the petitioner does not claim that he was denied counsel. In fact, from the record, petitioner had the aid of an able and competent attorney who defended his client with vigor. Further there is no allegation that at any time in the proceedings, even from the earliest moments when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect . . .", Escobedo v. Illinois, 378 U.S. 478, at 490, 491, 84 S.Ct. 1758, at 1765, 12 L.Ed.2d 977 (1963) the petitioner was not afforded the fullest protection of counsel.

▆ Petitioner argues that when the prosecutor questioned the innocence of the defendant in light of a phone call to his attorney, he was seeking to raise the inference of guilt from such conduct in the minds of the jury. He further argues that such comment and its resultant inference worked to penalize petitioner for the exercise of his right to counsel. This, says petitioner, was constitutional error.

No authority deals directly with the question of whether constitutional error can be found in a prosecutor's comment to the jury on the exercise by a defendant of his right to counsel. The closest cases deal with comment upon a defendant's silence in the face of damaging evidence. While there are fundamental differences between the Fifth and Sixth Amendment privileges, adverse comment upon their exercise by a prosecutor in his summation can be seen to have similar effect. Where the prosecutorial intent of such comments is to inflict a penalty upon the defendant for the exercise of his rights, through the raising of an adverse inference of guilt in the minds of the jury, such comment clearly would produce constitutional error.

Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) dealt with such a comment by a prosecutor. In that case the defendant's failure to take the stand was stressed by the District Attorney in his closing argument to the jury. He urged the jury to draw the inference that defendant's refusal to testify under oath indicated defendant's inability to deny his guilt. The Supreme Court found that to be constitutional error. Justice Douglas called the admission of such a comment "a penalty imposed by courts for exercising a constitutional privilege." *Griffin, supra,* at 614, 85 S.Ct. at 1232. Going further, the Court said:

"The Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615, 85 S.Ct. at 1233.

Fagundes v. U. S., 340 F.2d 673 (7th Cir. 1965) followed the reasoning of *Griffin, supra.* There the Court refused to allow any adverse inference to be drawn from defendant's failure to take the stand or from his refusal to give a statement upon arrest without the assistance of counsel. The Court said:

His (Fagundes) assertion of one constitutional right, his right to counsel, and his reliance upon another constitutional right, his right to remain silent when charged with crime, we think cannot be used against him substantively as an admission of guilt, for to do so would be to render the constitutional rights mere empty formalities devoid of practical substance."

▆ I am unable to find merit in the State's attempted distinction of the Macon fact-pattern from the facts in *Fagundes, supra,* on the grounds that in the instant case the right to counsel had not yet ripened as of the time of Macon's call to his attorney. Relying on United States v. Hoffa, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) the State argues that there is no right to

counsel in the Macon situation, where the attempted exercise of that right occurred so far before arrest. *Hoffo, supra,* does not say when the right to counsel accrues. It merely states that there is no necessity of warning someone of his rights when he is talking to a police informer. A person always has the right to confer with counsel. *Escobedo, supra*; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and related cases only say when the police must inform a suspect of his right to counsel or provide it for him. They do not preclude a person from seeking the assistance of counsel prior to arrest on his own, nor do they make that any less of a constitutional right.

The State further attempts to distinguish this case from the other authority on the grounds that no reasonable jury would draw an adverse inference from Macon's actions. The State, in effect, says that any reasonable man who had been involved in an incident similar to the one outside the Triangle Inn would call his attorney for advice. This, the State argues, is such a commonplace act that no jury which is made up of reasonable minds could infer guilt therefrom. I feel that this argument goes not to the nature of the comments but rather to the determination of the possible prejudice that might have resulted from them. The questionable comment only had to have a possible harmful effect on petitioner's rights to make it constitutional error. Here this comment could have had such an effect. Macon could have been penalized for consulting his attorney. This possibility alone is enough to make the comment constitutional error.

Having determined that the comment was constitutional error, the Court must now look to the weight given the comment and its influence on the outcome of the case, to discern its prejudicial value. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), holds that not all constitutional error is sufficiently prejudicial to necessitate the issuance of the Writ. Constitutional error may be harmless. *Chapman, supra.* Therefore, if Macon was not prejudiced by the comments, no relief can issue.

█ The prejudicial nature of constitutional error is to be determined by Federal standards. Therefore, it is not necessary for this Court to decide whether the standard applied by the State Court was improper, as urged by the petitioner. *Chapman, supra;* Schultz v. Yeager, 293 F.Supp. 794 (D. N.J.1967): *Chapman, supra,* and Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) outline the Federal standard. *Chapman* says, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. The *Chapman* court called its standard identical to the one set forth in *Fahy, supra.* The *Fahy* test said that, "the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. at 86, 87, 84 S.Ct. at 230.

*Fahy* says that it is necessary to review the complete trial record, looking at all the evidence and testimony and the facts of the case, to solve the harmless error question.

█ This Court's task, then, is to look at the entire set of circumstances which surrounded petitioner Macon's conviction, from the incident that night in May of 1969, through the jury's rendering of its verdict, to determine whether the comment made by the prosecutor in his summation contributed to petitioner's conviction.

The record here has been thoroughly reviewed and under the *Chapman* test this Court is convinced beyond a reasonable doubt that the prosecuting attorney's comment did not influence the manslaughter conviction which was returned by the jury.

As we noted before, a thorough reading of the transcript reveals that Macon's trial attorney did a diligent and energetic job in his client's behalf. Trial coun-

74

sel was prepared well and carried forth both direct and cross-examinations with skill and effectiveness. He demonstrated that he had both ability and a deep concern for his client's case. Yet when this challenged comment was made in the prosecutor's summation, Macon's trial counsel did not raise an objection. He did not interrupt the prosecutor, nor did he later object to the Court, or ask for a mistrial or a corrective instruction. Counsel was in the best position to judge the effect of the comment upon the jury. By his failure to complain, it can only be reasoned that he felt the comment did not warrant an objection.

The error complained of amounted to one short statement during the course of a three week trial. Unlike the *Griffin*, and *Fagundes* cases, there was no repetition of the error, nor do I feel that it was impressed upon the minds of the jury. Additionally, I agree with the State that a reasonable juror would not be swayed one way or the other by the Prosecutor's statement.

As in all trials, crucial to the verdict was the credibility of the witnesses. Petitioner would have this Court find that a manslaughter conviction proves that the jury accepted the testimony of the prosecution witnesses and disregarded the version of the incident related by the witnesses for the defense because of the comment of the prosecutor. I am unable to agree with this contention.

There is ample evidence to support petitioner's conviction and I do not believe that the prosecutor's comment in any way contributed to the jury's decision.

█ There is a guarantee to every citizen of a fair trial. That trial does not have to be free of error or perfectly tried in order to be fair. Leonard v. United States, 386 F.2d 423 (5th Cir. 1967); United States v. Hoffa, 367 F.2d 698 (7th Cir. 1966); United States v. Menk, 406 F.2d 124 (7th Cir. 1968); Moore v. United States, 375 F.2d 877 (8th Cir. 1967); 18 U.S.C. Rules of Crim.Proc. rule 52(a, b). In *Chapman, supra*, the Court held that even constitutional errors do not necessarily raise the level of the error to such a plane as to require reversal. While *Chapman* creates a presumption as to the prejudice which will result from constitutional error, such presumption is overcome when the Court is convinced that such error did not contribute to the likelihood of conviction.

Therefore, this Court holds itself convinced beyond a reasonable doubt that while these comments were constitutional error, they were not sufficiently prejudicial as to contribute to the conviction of the petitioner for manslaughter on the facts adduced at trial.

In accordance with the foregoing, it is on this 13th day of January, 1972 ordered that the application of petitioner, Isiah Macon, be and the same is hereby denied.