UNITED STATES of America, ex rel.
Isiah MACON, Appellant,

v.

Howard YEAGER, Principal Keeper of
the New Jersey State Prison.

No. 72–1170.

United States Court of Appeals,
Third Circuit.

Submitted Oct. 17, 1972.

Argued on Reconsideration Jan. 17, 1973.

Decided March 30, 1973.

Gary A. Kroop, Stepacoff, Koch & Kroop, Perth Amboy, N. J., for petitioner-appellant.

Terry Philip Green, New Brunswick, N. J., for appellee.

Before ADAMS and GIBBONS, Circuit Judges and LAYTON, District Judge

OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal, the petitioner seeks review of a decision by the district court [1] denying his application for a writ of habeas corpus. This Court is urged to hold that petitioner's constitutional rights were violated and that error, not harmless in nature, was committed, when at his state trial the prosecutor

1. United States ex rel. Macon v. Yeager, 336 F.Supp. 69 (D.N.J.1972).

commented during his summation to the jury the petitioner consulted an attorney the day after the alleged crime was committed and suggested that from this the jury should question the innocence of petitioner.

Petitioner, Isiah Macon, was convicted in state court of manslaughter and sentenced to serve a term of not less than seven nor more than ten years. It appears that petitioner and one Abrahms had been in a minor traffic accident in New Brunswick, New Jersey. The deceased, Ralph Sasso, arrived at the scene of the accident and became involved in the discussion between Macon and Abrahms. Both Sasso and Macon had been drinking that evening. During the ensuing altercation Sasso was killed by Macon's gun.

The details of the events leading up to Sasso's death are in dispute. The state's evidence indicates that when, in the course of the argument, Sasso placed his hand on Macon's shoulder, Macon stepped back, drew a gun, shot Sasso twice, and then drove away with friends. Petitioner's version of the events indicates that Sasso interfered in a racially abusive and aggressive manner, punched Macon twice, assaulted Macon with the help of friends, and was shot by Macon's gun, which was fired accidentally by Macon during the course of the struggle.

It is uncontradicted that after the incident, Macon and his friends drove away and Macon instructed them to give no statements and to take no action until he had consulted his attorney. Macon testified that, alone, he then drove aimlessly around, threw the gun out the car window, parked his car in a place he could not recall, walked home, put his blood-stained shirt away, went to bed, and the next morning telephoned his lawyer and was later arrested.

In view of the different accounts of what had happened at the time of the shooting, it thus became crucial for the jury to determine which characterization of the facts was true, the state's or Macon's. If the jury credited the state's evidence, it could very well have brought in a verdict of murder. On the other hand, a belief in petitioner's testimony and other defense evidence might have supported the view that Sasso's death was either accidental or the result of Macon's attempt to repel aggression.

During his summation to the jury, the prosecutor commented upon Macon's actions following the shooting incident:

"Then what does he do? He drives along and can't tell us where. The gun goes out the window. An act of innocence?

"The car is left somewhere and he doesn't remember where. An act of innocence?

"He goes home and puts the shirt down in the chest, a torn shirt. Then he goes to bed. He says he had trouble sleeping. He gets up the next morning and lo and behold, what does he do? He calls his lawyer. *These are acts of innocence?* (Emphasis added)

"I say, ladies and gentlemen, his story is implausible, impossible and you can judge by his own *conduct*, unbelievable." (Emphasis added)

The defendant made no objection to the comment and did not request the trial judge to offer any instruction to the jury regarding it.

■ Macon's appeal of his manslaughter conviction to the Appellate Division of the New Jersey Superior Court was rejected. The conviction was later affirmed by the New Jersey Supreme Court, State v. Macon, 57 N.J. 325, 273 A.2d 1 (1971), which lowered his term of incarceration from seven to ten years to two to seven years.[2]

---

2. In addition to covering at some length the constitutional right and harmless error issues raised in the present appeal, *infra*, the New Jersey Supreme Court discussed the point that by failing to object and to request a disapproving instruction concerning the prosecutor's comment, Macon waived his right to claim error.

Having exhausted his state remedies, Macon sought federal habeas corpus relief, asserting that the prosecutor's statement about his call to a lawyer violated his Sixth Amendment right to counsel, as applied to the states through the Fourteenth Amendment. The district court denied the writ, holding that, although constitutional error was committed, "the effect on the trial was not sufficiently prejudicial as to require the granting of petitioner's request for the Writ." 336 F.Supp. at 71.

It should be noted that petitioner does not argue that he was denied counsel or that his defense was presented by a lawyer of less than adequate ability. Rather, Macon claims that the prosecutor's statement concerning his telephone call to counsel sought, or at least may reasonably be expected to have tended, to raise in the minds of the jurors an inference of guilt and, as a result, penalized him for the exercise of his constitutional right to counsel.

Few cases deal directly with the question whether a prosecutor's comment to the jury concerning a defendant's exercise of the right to counsel is constitutional error. The district court concluded that Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), presented a situation sufficiently analogous to require recognition that constitutional error was committed here.

In *Griffin,* the prosecutor stressed the defendant's failure to take the stand and urged upon the jury the inference that such failure demonstrated the defendant's inability to deny his guilt. Holding such prosecutorial comment violative of the Fifth Amendment privilege against self-incrimination, the Supreme Court deemed the statement "a penalty imposed by the courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." 380 U.S. at 614, 85 S.Ct. at 1232.

The *Griffin* Court focused its inquiry upon whether the petitioner had been "compelled . . . to be a witness against himself," U.S.Const. Amend. V, whereas in the present case, the relevant constitutional provision called into question is the Sixth Amendment right to counsel. For the purpose of the "penalty" analysis, however, we perceive little, if any, valid distinction between the privilege against self-incrimination and the right to counsel. It can be argued, with equal vigor and logical support, as to either the *Griffin* situation or the present case, that a prosecutor's comment seeking to raise in the jurors' minds an inference of guilt from the defendant's constitutionally protected conduct constitutes a "penalty" on the free exercise of a constitutional right.[3]

If we were writing on a tabula rasa, the "penalty" argument perhaps could be examined from different viewpoints. One mode of analysis would focus upon the *person* asserting that his rights have been "penalized" and determine whether he has been adversely affected by the

57 N.J. at 333–335, 273 A.2d 1. Although the state has an interest in treating errors raised at trial differently from those not timely challenged, *see* Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), federal courts considering habeas corpus petitions are not bound by the state procedural rule and must permit a petitioner to raise constitutional issues for the first time in the federal proceeding so long as state procedures have not been deliberately bypassed. *See, e. g.,* Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). There is nothing in the record to indicate that any deliberate bypass occurred in this case. Accordingly, there is no warrant for remanding the cause to the district court to deal with this matter.

3. *See* Baker v. United States, 357 F.2d 11, 13–14 (5th Cir. 1966) ; Fagundes v. United States, 340 F.2d 673, 677 (1st Cir. 1965) ; Jones v. United States, 111 U.S.App.D.C. 276, 296 F.2d 398, 408–411 (1961) (Fahy, J. dissenting), cert. denied, 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed.2d 406 (1962) ; Commonwealth v. Haideman, 284 A.2d 757 (Pa.Sup.Ct.1971) (affirmed by equally divided court) (Roberts, J. dissenting) ; *cf.* Sharp v. United States, 410 F.2d 969, 972–973 (5th Cir. 1969) (Brown, C. J. dissenting).

state's use of his constitutionally protected conduct. An alternative analysis would focus upon the particular constitutional *right* in question and determine whether, and if so to what extent, the state's use of constitutionally protected conduct has or will "burden" the right, i. e., deter the defendant or others from engaging in the particular constitutionally protected activity.

The *Griffin* majority has accepted the former analysis, at least in the criminal context. In contradistinction to the "absolutist" approach to the "penalty" question employed by Justice Douglas in *Griffin*, Justice Stewart, in a dissenting opinion in *Griffin*, urged utilizing an approach that would examine "the concept of compulsion [within] reasonable bounds," 380 U.S. at 620, 85 S.Ct. at 1236, and would measure the advantages and disadvantages of a rule permitting the prosecutor or judge to comment upon a defendant's silence at trial. His view, however, was not accepted by the majority.

■ It would appear that the "absolutist" *Griffin* approach to the "penalty" argument has been diluted somewhat in other contexts. *See* Shapiro v. Thompson, 394 U.S. 618, 634, 638 n. 21, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel interstate); Walker v. Yucht, 352 F.Supp. 85 (D.Dela., filed Dec. 6, 1972) (3-judge court). Whatever the proper "penalty" approach may be under different circumstances, however, *Griffin* holds broadly that, at least in the criminal context, the relevant question is whether the particular *defendant* has been *harmed* by the state's use of the fact that he engaged in constitutionally protected conduct, not whether, for the particular defendant or for persons generally, the state's reference to such ac-

tivity has or will *burden* the exercise of the constitutional *right*. This particular "penalty" analysis would appear to apply equally to the present case as to the *Griffin* situation.

■ Thus we are constrained to agree with the district court that the prosecutor's comment to the jury was constitutional error. However, we are unable to conclude, as the district court did, that such error was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Supreme Court has stated that an error of constitutional dimension is not harmless if "there is a reasonable possibility that [it] might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). The state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman, supra,* 386 U.S. at 24, 87 S.Ct. at 828.

In the present case, because critical portions of the evidence were disputed, the credibility of the petitioner as a witness was a central issue. This is not a situation where the case against the petitioner was otherwise "so overwhelming" that the constitutional error did not, beyond a reasonable doubt, contribute to the conviction. *Cf.* Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The prosecutor's comment concerning Macon's consultation with counsel the day after the shooting incident would appear to have been directed to, and may have had the effect of, raising in the jurors' minds the inference that petitioner was, or at least believed himself to be, guilty.[4]

---

4. Evidence concerning Macon's consultation with counsel was injected into the case by the prosecutor during cross-examination of petitioner:

"Q. You told [your companion] not to tell anyone about this?

"A. I said don't say anything about it until I see my lawyer.

"Q. When did you first get ahold of your lawyer?

"A. The next morning.

"Q. As to your arrest?

"A. Before my arrest.

. . .

"Q. When is the next time that you knew for sure that Mr. Sasso was shot?

**617**

Such an inference might certainly tend to cause the jury to disbelieve Macon's version of the story. Under these circumstances, the possibility of prejudicial impact is present and we, therefore, are unable to conclude that the prosecutor's comment was *"harmless beyond a reasonable doubt."*

We recognize that in reversing the district court's harmless error ground for decision this Court may be thought to be simply substituting its subjective judgment for that of the district court and the state courts. Thus, the New Jersey Supreme Court, in a well-reasoned and articulate opinion by Chief Justice Weintraub, concluded, much like the district court judge, that the prosecutor's comment was "thoroughly harmless" because "the point defendant attributes to the prosecutor was indeed pointless and a jury would readily understand this to be so. Nor does the result of the trial even faintly suggest harm. Defendant fared as well as he could have hoped." 57 N.J. at 335, 273 A.2d at 6.

While the error may not have contributed to petitioner's conviction, this Court is simply unable to conclude, on the basis of an independent examination of the record, that "there is [not] a reasonable possibility that [it] might have contributed to the conviction," and this is the test mandated by the Supreme Court in Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L. Ed.2d 171 (1963). Frequently, appellate courts are called upon, in performing an appropriate reviewing function, to determine whether any error that has been committed may be adjudged "harmless." So often, this is an assignment not free from deep concern. But because it is required, we must resolutely and objectively discharge it, whatever our own personal predilections may be.

The judgment of the district court will be reversed, and the case remanded to the district court for action consistent with this opinion.

"A. When the police picked me up and take me to Somerset Jail down there.
"Q. If that is so, why did you call [your lawyer] at seven o'clock before they picked you up? Why did you call your lawyer before they picked you up if that is so?