# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CT-00996-SCT

*AUNDRA LAVELL RIDDLEY*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VICKI LACHNEY GILLIAM |
| ATTORNEYFOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | EDWARDS J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-06/29/2000 |
| MOTION FOR REHEARING FILED: | 7/10/2000; denied 2/22/2001 |
| MANDATE ISSUED: | 3/1/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Aundra Lavell Riddley was convicted of murder in the Hinds County Circuit Court and sentenced to life in prison. The Court of Appeals affirmed Riddley's conviction, and this Court granted review on petition for writ of certiorari. This case presents the question whether the prosecutor's use of the fact that the defendant consulted with counsel prior to his submitting to arrest to argue inference adverse to the defendant requires reversal. We hold that, in this case, it does not.

## STATEMENT OF FACTS

¶2. At trial, Riddley did not dispute that he killed the victim, David Clemmons. Rather, Riddley argued that he killed Clemmons in self-defense. At trial, Tammy McLin, Riddley's girlfriend, testified that Riddley exchanged words with David Clemmons on the night of February 25, 1996, because Clemmons was allegedly selling drugs in front of the McLin residence. She also testified that Clemmons returned the next morning and again became involved in a verbal altercation with Riddley. Bobbie Hawkins, a neighborhood resident, testified that she saw Riddley pull a gun and begin shooting at Clemmons's feet. She further testified that she saw Riddley chase Clemmons down a hill while Riddley continued to fire his pistol. David Shaw, an MP&L employee, testified that he saw Clemmons stagger into the street and collapse. Shaw did not see a gun in Clemmons's possession, and one was never recovered. An autopsy revealed that

Clemmons had been shot six times, twice in the back. Riddley, Tammy McLin, and her sister, Franzetta McLin, testified that Riddley shot Clemmons in self-defense. Riddley fled the scene and checked into a local motel where he stayed until he turned himself in on the advice of counsel.

¶3. The jury found Riddley guilty of murder. The Court of Appeals affirmed the conviction and life sentence. *Riddley v. State*, No. 1998-KA-00996-COA (Miss. Ct. App. Aug. 24, 1999).

## DISCUSSION OF LAW

¶4. Riddley contends that the State improperly commented on his right to counsel during cross-examination and closing argument by drawing attention to the fact that he sought the advice of counsel before turning himself in. At trial, the following exchange took place between the prosecutor and Riddley:

Q. So the first person you called was this defense lawyer; is that right?

A. (Witness nods head affirmatively.)

Q. Right?

A. Yes, sir.

Q. All right. So you called your lawyer, and you told him what had happened; isn't that right?

A. Yes, sir.

Q. Well, when did you call the police?

A. When did I call the police? Me and my lawyer went to the detective's office and turned myself in.

Q. How many days did you stay at the hotel before you called the police?

A. I never called the police.

Q. How many days did you stay there before you called your lawyer?

A. Whenever I seen -- the day I seen it on the news. That's when I called my lawyer. . . .

Q. Did you ever come back and talk to the police, Mr. Riddley?

A. No, sir.

Q. Did you ever call the police and tell them what happened?

A. No, sir. After I found out what had happened, that it was more than just a, you know, just shooting or something like that, that's when I got in touch with my attorney.

Q. What do you mean? You learned that you had killed somebody?

A. Yes, sir. Once I learned that right there I got in touch with my attorney and told him the

circumstances of the case.

Q. You learned the police were looking for you, didn't you?

A. I learned -- once I seen it on the news that he was shot, they already -- they said that they were looking for somebody, and they didn't even have -- I don't know if they had my name or not. I just came. I got my lawyer and told my lawyer what had happened and turned myself --

Q. -- Well, you didn't call him and tell him where you were and that you were scared of somebody, did you?

A. Who? My lawyer?

Q. Uh-huh.

A. I told my lawyer --

Q. -- Did you call the police and tell them that you were afraid, come get me?

A. No. I got my lawyer. I told my lawyer. You know, I asked my lawyer, you know, what he think that we should do, you know, because I said I want to turn myself in, but I want to turn myself in with a lawyer so it wouldn't be harassment and stuff like that and -

¶5. Riddley also contests the following comment made by the prosecution during closing argument:

This guy, who when he went -- no job. Just happened to have enough money for cab fare for the five dollar trip and the hotel fee, this 18-year-old who when he realizes that he's killed a man doesn't call his mother. He never called his mother. Who did he call? He called his lawyer. And his lawyer said, we'll turn you in, he said, so that you'll have a chance of getting out on bond because if you run, you won't get a bond when they catch you, and they're going to catch you, and that's why he turned himself in.

¶6. The Court of Appeals noted that no contemporaneous objection was made by Riddley's trial attorney to any of these comments and that the issue was procedurally barred. *Jackson v. State*, 684 So. 2d 1213, 1226 (Miss. 1996). The Court of Appeals then found that the prosecution comments did not rise to the level of plain error. This Court addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. *Walker v. State*, 671 So. 2d 581, 606 (Miss.1995).

¶7. Riddley argues that the prosecutor's questions on cross-examination reflected negatively on his exercise of his right to counsel and should not be considered harmless. Riddley cites *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980), for the proposition that "comments that penalize a defendant for the exercise of his right to counsel and also strike at the core of his defense cannot be considered harmless error."

¶8. Riddley is correct in arguing that it is constitutionally improper for a prosecutor to comment negatively on a criminal defendant's right to counsel. *See, e.g., United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980); *United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir. 1973). However, problematic is the fact that to apply this rule in the case at hand, this Court would have to accept the proposition that a criminal defendant has a constitutionally protected right to counsel before any criminal proceedings against

him have begun. The United States Supreme Court has long held that the Sixth Amendment guarantees the right to counsel at "critical" stages of criminal proceedings even before trial. *__Powell v. Alabama__*, 287 U.S. 45, 57, 53 S. Ct. 55, 77 L. Ed. 158 (1932). For example, the right to counsel attaches during pre-indictment custodial interrogation, *__Escobedo v. Illinois__*, 378 U.S. 478, 184 S. Ct. 1758, 12 L. Ed. 2d 977 (1964). Never, however, has the United States Supreme Court or this Court held that there is a constitutionally protected right to counsel <u>before</u> a suspect is questioned, or even before a police investigation is instituted.

¶9. In this case, Riddley went to a motel after the shooting and stayed there until he heard a news report that the victim had died. He did not know if he was a suspect in the crime or if the police were investigating him at all. The only indication that Riddley himself had that he was a suspect was his own personal knowledge of his involvement in the crime. While Riddley's actions in contacting and counseling with an attorney were probably wise, they were not constitutionally protected at the time.

¶10. This Court is aware that there are good public policy reasons to prevent a prosecutor from raising a negative inference of guilt in connection with a criminal defendant's desire to consult with an attorney. On the contrary, we should encourage those in need of legal assistance to receive competent counsel at the earliest possible time. Nor should any negative inference be presented to a jury. It is for that reason that <u>M.R.E. 403</u> allows a judge to exclude testimony which may be more prejudicial than probative. Any reference to the seeking of legal counsel prior to police involvement in a crime should not be used against a criminal defendant as it would be more prejudicial than probative and should be excluded under the rules of evidence. The conclusion, however, that the prosecutor's comments in this case were improper is not based on a constitutionally protected right to counsel before the police have even approached the criminal defendant about his involvement in the crime.

¶11. Furthermore, in *United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir. 1973), the United States Court of Appeals for the Third Circuit acknowledged that there exist situations in which the case against a defendant is otherwise so overwhelming that any overreaching by the prosecution in commenting on the defendant's exercise of a constitutionally protected right amounts to nothing more than harmless error. *Id.* at 616 (citing *__Milton v. Wainwright__*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *__Harrington v. California__*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). The Supreme Court's opinion in *__Doyle v. Ohio__*, 426 U.S. 610, 619-20, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), clearly permits, on a case-by-case basis, a finding of harmless error. This rule has been reiterated by the United States Court of Appeals for the Fifth Circuit. *See, e.g., Stone v. Estelle*, 556 F.2d 1242, 1245 (5th Cir. 1977); *United States v. Davis*, 546 F.2d 583, 594, 595 n.31 (5th Cir. 1977). The Fifth Circuit has noted that "[e]ven in cases where it was held that a *__Doyle__* problem resulted in reversible error, there has sometimes been reference made to the fact that error therein was not harmless because the evidence was not overwhelming." *Stone*, 556 F.2d at 1245 (citing *United States ex rel. Ross v. Fike*, 534 F.2d 731, 734 (7th Cir. 1976); *United States v. Impson*, 531 F.2d 274, 278-79 (5th Cir. 1976)).

¶12. This Court has held that even errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming. *__Kircher v. State__*, 753 So. 2d 1017, 1027 (Miss.1999) (holding harmless any error in admitting accused's confession despite accused's complaint that confession was given involuntarily). *See also __DeLoach v. State__*, 722 So. 2d 512, 520 (Miss. 1998); *__Thomas v. State__*, 711 So. 2d 867, 872 (Miss. 1998). The evidence in the record against Riddley and in support of the jury's verdict is so

overwhelming that any error in the prosecutor's comments is harmless beyond a reasonable doubt.

¶13. Riddley admits that he shot and killed Clemmons. Riddley's defense, however, is that the shooting occurred in self-defense. This defense is paper thin and was undercut by Riddley's own testimony as well as that of his own witnesses and those of the State. Bobbie Hawkins testified that she observed Riddley pointing the gun at Clemmons's legs and shooting and that she then saw Clemmons running down the hill, with Riddley running down the hill behind Clemmons, still shooting at Clemmons. Hawkins testified that when Riddley began shooting, Clemmons was "just standing there" and that Clemmons never drew a weapon. The physical evidence at trial corroborates Hawkins's testimony in that the autopsy performed on Clemmons revealed that he had been shot a total of six times (twice in the back and once in the back of the leg). The gun Clemmons allegedly used to first attack Riddley was never recovered from the scene of the crime nor was one found on the body of Clemmons or anywhere in the vicinity. David Shaw testified that Clemmons had no gun at the time he staggered into the street asking for help.

¶14. Testifying in his own behalf, Riddley testified that Clemmons told him he was "going to get" Riddley and that Clemmons fired his weapon first. The defense also offered the testimony of Tammy McLin, Riddley's girlfriend, and Franzetta McLin, Tammy's sister, in an apparent attempt to corroborate Riddley's account of the altercation. The separate accounts of the events which allegedly occurred on the day of the crime and on the days after the crime offered by these three witnesses contradict each other numerous times. The individual account offered by each witness at times contradicts testimony given by that witness at the preliminary hearing. For instance, at the preliminary hearing, Tammy testified that she did not know who pulled a gun first, yet, at trial, she stated that Clemmons pulled a gun first. The testimony of Tammy on cross-examination even contradicts her testimony given no more than five minutes earlier. On direct, Tammy testified that she did not hear what Clemmons said to Riddley, yet on cross-examination testified that Clemmons told Riddley he was "going to get" him. The jury possibly even concluded that, not only could the defense witnesses not keep their stories straight, but that they did not observe the incident at all. The State offered the testimony of Officer J.K. Webb in rebuttal to the testimony of Tammy and Franzetta that they had observed the altercation between Riddley and Clemmons. Webb testified that when questioned about the shooting just hours after it occurred, both Tammy and Franzetta told police that they had been asleep at the time of the altercation.

## CONCLUSION

¶15. The evidence of guilt in this case was very strong, and the jury apparently disbelieved the testimony of the three witnesses offered by the defense. Regardless of the overreaching prosecutorial statements and questioning made at trial, the prosecution successfully discredited the testimony of all three. The challenged remarks did not have an intolerably prejudicial impact in these circumstances. When read in the context of the entire cross-examination and closing argument, these remarks were not prejudicial to Riddley, considering the overwhelming evidence of his guilt.

¶16. The judgment of the Court of Appeals is affirmed.

¶17. **AFFIRMED.**

> **MILLS, WALLER AND COBB, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., PITTMAN, P.J., AND McRAE, J. DIAZ, J., NOT PARTICIPATING.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶18. The majority concludes that the prosecution's comments did not rise to the level of plain error. Because I disagree with the majority as to the scope of the right to counsel and with its harmless error analysis of the district attorney's improper comment on such a fundamental right, I respectfully dissent.

¶19. This Court addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. *Walker v. State*, 671 So.2d 581, 606 (Miss. 1995). The Court of Appeals noted that no contemporaneous objection was ever made by attorney Jimmie Marshall to any of these comments and that the issue was procedurally barred. *Jackson v. State*, 684 So. 2d 1213, 1226 (Miss. 1996). The prosecutor's repeated questions on cross-examination reflected negatively on Riddley's exercise of his right to counsel, however, and should not be considered harmless.

¶20. In *United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3d Cir. 1972), it was held that a prosecutor's comment that a homicide defendant saw his attorney the morning after the shooting was error because the comment may have raised an inference that the defendant was guilty. In that case, the prosecutor rhetorically asked the jury during closing argument whether disposing of a weapon, car and clothing and calling a lawyer were acts of innocence. The appellate court found that critical portions of the evidence were disputed by differing accounts of the events and that it could not be said that there was no reasonable possibility that the erroneous reference might have contributed to the conviction. *Id.* at 617.

¶21. In its analysis, the *Yeager* court looked to *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965) wherein the prosecution stressed that the defendant's failure to testify demonstrated his inability to deny his guilt. In *Griffin*, the Supreme Court said that such a comment is "a[n impermissible] penalty imposed by the courts for exercising a constitutional privilege." 380 U.S. at 614. In *Yeager*, the court found little distinction between the privilege against self-incrimination and the right to counsel. Responding to the district court's application of harmless error analysis, *Yeager* says:

> Thus we are constrained to agree with the district court that the prosecutor's comment to the jury was constitutional error. However, we are unable to conclude, as the district court did, that such error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Supreme Court has stated that an error of constitutional dimension is not harmless if "there is a reasonable possibility that [it] might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). The state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, supra, 386 U.S. at 24, 87 S.Ct. at 828.

> In the present case, because critical portions of the evidence were disputed, the credibility of the petitioner as a witness was a central issue. This is not a situation where the case against the petitioner was otherwise "so overwhelming" that the constitutional error did not, beyond a reasonable doubt, contribute to the conviction. Cf. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The prosecutor's comment concerning Macon's consultation with counsel the day after the shooting incident would appear to have been directed to, and may have had the effect of, raising in the jurors' minds the inference that petitioner was, or at least believed himself to be, guilty. Such an inference might certainly tend to cause the jury to disbelieve Macon's version of the story. Under these

circumstances, the possibility of prejudicial impact is present and we, therefore, are unable to conclude that the prosecutor's comment was "harmless beyond a reasonable doubt."

476 F.2d at 616 (footnote omitted). In the present case, the closing argument by the prosecutor allowed the inference that seeking an attorney's advice was the act of a guilty person. In *Yeager*, the Third Circuit found error because the facts were in dispute, thereby placing the defendant's credibility at issue. Likewise, here, when Riddley took the stand to present a self-defense scenario, his credibility too was at issue.

¶22. In *United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980), McDonald was convicted of dealing in counterfeit currency and conspiracy to do the same, largely on the testimony of his co-indictees who linked him to the crime. There was no hard evidence of his guilt. At trial, a government witness testified that McDonald had a lawyer present at his home when a search warrant was executed. The Fifth Circuit held that the related questions and comments concerning the presence of an attorney during a search allowed an implication that McDonald had destroyed incriminating evidence which "struck at the jugular of his exculpatory story." *Id.* at 563.

¶23. In *Arthur v. State*, 575 So.2d 1165 (Ala. Crim. App. 1990), a murder conviction was reversed where the prosecutor asked the defendant if he was once represented by the same attorney as his co-defendant who had already admitted guilt. During closing argument, the prosecutor commented that money had gone into the bank account of the former attorney and that the former attorney had dropped the appeal of the co-defendant. A state appellate court found the comments created an impermissible inference of guilt.

¶24. The Fifth Circuit found no such prejudice in the factually-similar case of *Stone v. Estelle*, 556 F.2d 1242 (5th Cir. 1977), where the defendant claimed that he became involved in an argument in the men's room of a bar and that he shot his victim in self-defense after the victim purportedly produced a weapon. The defendant testified that he fled the scene not knowing whether he had killed the victim and called his lawyer after learning otherwise. The defendant in *Stone* testified that he had not attempted to flee and was on his way to turn himself in when he was arrested. The prosecutor cross-examined him to show that the defendant did not cooperate with police but only asked for a lawyer. The prosecutor's remarks were held by the appellate court to be unwarranted but that they did not reflect on the defendant's guilt or innocence. The Fifth Circuit held that the comments "did not have an intolerably prejudicial impact" in light of the overwhelming evidence of guilt. *Id.* at 1246.

¶25. The majority states that a defendant does not have a constitutional right to confer with "counsel before a suspect is questioned, or even before a police investigation is instituted." I disagree. Surely, a person, in any legal matter, criminal or otherwise, may confer with counsel. Our long-held public policy is to protect such conferences with a cloak of confidentiality. M.R.E. 502. It is a matter of prudence to consult an attorney regarding such matters. In fact, it is often recommended that a person seek the advice of counsel at the inception of any serious legal matter.

¶26. When we speak of right to counsel having attached, in the usual sense, we speak of the obligation of the government to warn the person that he has that right and its obligation to assure that right to the point of supplying counsel to those who cannot afford counsel otherwise. The Fifth and Sixth Amendments are not a line of demarcation for individuals to exercise the right to confer with counsel. Although there is no right to affirmative government action here, there is a right to confer with counsel.

¶27. This point was recognized in the only cases the writer has found treating the issue. The court found

reversible error for violating this right observing that:

> [t]he right of persons to seek the advice and assistance of counsel is not, of course, restricted to the specific right afforded by the Sixth Amendment or its State counterpart.... A person has an independent right, protected we think by the general due process clause of the Fourteenth Amendment and its State counterpart . . . to seek legal advice or representation at any time, on any matter, and for reason. This is especially so when the person perceives that civil or criminal litigation against him may be in the offing . . .

*Hunter v. State*, 573 A.2d 85, 91 (Md. Ct. Spec. App. 1990). *See also* **Waddell v. State**, 582 A.2d 260, 264 (Md. Ct. Spec. App. 1990).

¶28. While the conduct of the prosecutor in Riddley's trial may not appear as egregious as the comments in the *Yeager, McDonald,* and *Arthur* cases, his comments nonetheless raised an impermissible inference of guilt. The prosecutor's questions on cross-examination drew unwarranted attention to the fact that Riddley decided to place a telephone call to an attorney before contacting anyone else. The prosecutor's comment in closing suggested that Riddley turned himself in only to become eligible for bail but unnecessarily emphasized the decision to first consult with his attorney. These references were fundamentally improper, and the majority's decision not to reverse on this issue is, in my view, wrong.

**PRATHER, C.J., PITTMAN, P.J., AND McRAE, J., JOIN THIS OPINION.**