573 A.2d 85

**Russell William HUNTER**

v.

**STATE of Maryland.**

**No. 1254, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 8, 1990.

680

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and David Weston Gregory, State's Atty. for Queen Anne's County, Centreville, on the brief), for appellee.

Submitted before WILNER and ALPERT, JJ., and (JAMES S. GETTY, Associate Judge (Retired), Specially Assigned).

WILNER, Judge.

On the evening of May 25, 1988, while driving south on Md. Route 213 toward Centreville, appellant slammed into the rear of a vehicle that had just turned on to Route 213, killing a passenger in the rear seat of that car. Principally on the basis of certain observations made by one of the investigating officers, Trooper Virginia Prince, and a blood test taken later at a hospital, appellant was charged with, and ultimately convicted in the Circuit Court for Queen Anne's County of, negligent homicide by motor vehicle while intoxicated, driving while intoxicated, and failure to control the speed of his vehicle to avoid a collision.

From the judgments entered on those convictions, appellant has brought this appeal complaining that the court erred (1) in admitting evidence concerning a call appellant made to his attorney after the accident and (2) in allowing the prosecutor to comment in closing argument on a fact not in evidence. We need address only the first complaint.

There was little dispute about the accident itself. The victim's car entered Route 213 from Route 19; after making the turn, it had traveled about 92 feet when it was hit in the rear by appellant's car. The night was clear, the road was dry, and there was good visibility. Appellant admitted to driving about 55 miles per hour, which was the posted limit. He claimed that the other car pulled out onto Route 213 and that he did not see the car until he was about 15 feet from it. Appellant said that he finished work in Chestertown about 7:00, that he had four beers (but nothing more), and that he was on his way home when the accident occurred. He maintained that he was not intoxicated at the time. The State offered evidence that there were 19 empty beer cans inside appellant's car and that a blood test, taken three hours after the accident, showed that appellant had a blood alcohol content of 0.15. The critical issues in the case, of

course, were whether appellant was negligent and whether he was intoxicated at the time of the accident.

Appellant's first complaint had its genesis in the testimony of Trooper Prince. On direct examination, she said that when she arrived she spent the first 20 minutes or so observing the accident scene and trying to find the drivers of the two vehicles. She located appellant standing on the shoulder of the road, made certain observations, questioned him briefly about the accident, and had him taken to a hospital for medical attention. In the course of this recitation, she said that the police had been notified about the accident at 10:19 p.m. and that she thought appellant had made the call. That aspect of her testimony was quite innocuous.

In opening his cross-examination, defense counsel asked the equally innocuous question, "when you said that you thought that Mr. Hunter is the one who called, did you say the State Police or the ambulance or what," to which the trooper replied: "I believe I said he had called for assistance. He advised me that he had gone to the house—there is a house right across the street from where the accident occurred, and he advised me he also contacted his attorney —which, at that time, was a different attorney." Counsel not only let that answer pass without objection but continued to question Trooper Prince about the matter:

"Q But you don't know if he called the State Police or an ambulance? He called an ambulance?

A In order to call for an ambulance, you have to call Queen Anne's County Fire Board.

Q Okay.

A I don't know when he went to the residence if he called just his attorney, and the residents called the police and Fire Board or—"

Counsel dropped the matter at that point, and there things sat until appellant took the stand in his own defense. On direct examination, appellant said that, at the request of the driver of the other vehicle, he ran to a house across the

street and dialed "911" in order to summon an ambulance. On cross-examination, the prosecutor got back into the matter of the attorney with this colloquy:

"Q Now, you heard Trooper Prince testify, didn't you?

A Yes.

Q And she said that you had gone into the house. You told her that you called your lawyer?

A Yes.

Q Did you call your lawyer?

A Yes.

Q Why did you call your lawyer?

MR. SKIPP [Defense Counsel]: Objection, Your Honor.

THE COURT: Why?

MR. SKIPP: I don't think that's—

THE COURT: He's not asking what he said, he's asking why he called his lawyer. Overruled.

Q (BY MR. GREGORY) Why did you call your lawyer?

A To see if he would defend me.

Q And the reason you called your lawyer to see if he would defend you is because you were riding down the road with at least a .15 percent ethyl alcohol percentage weight in your blood stream, and you weren't paying attention to your driving, isn't that correct?

A No."

That colloquy ended the evidentiary presentation and the court then gave its instructions to the jury. Following the instructions, the prosecutor indicated at a bench conference some concern about a possible defense argument based on the fact that the victim was not wearing a seat belt, whereupon defense counsel interjected:

"I'm a lot more worried about all this talk about him calling his lawyer, that Trooper Prince responded to my question on cross-examination if he called an ambulance, completely on his own started talking about how he called his lawyer. Every single time I asked her a question

about something else, she got off three different times about how he called his lawyer.

. . . . .

I'm asking for a mistrial on that, because Trooper Prince totally disregarded my question, and for getting evidence to the jury about the lawyer, and which led to—it was like it was preplanned. And, then, the State's Attorney, on cross examination of my client, when he took the stand, started asking, because of Trooper Prince's bringing out the fact that he had called his lawyer—"

The court denied the motion.

The prosecutor, no doubt smelling blood, used the questioned evidence to good advantage. In his closing argument, he reminded the jury: "And, lastly, what does he tell you? He says, I ran into the house to call the ambulance. I called my lawyer. Why did you call your lawyer? Because I wanted to see if he would defend me." Again, in his closing argument, he left the jury with this:

"I suggest to you Mr. Hunter was drunk and his negligence caused this accident by his inability to react properly, by his own admission, and, lastly, you have Mr. Hunter who talks to his attorney and the last thing he says is 'I wanted to talk to my attorney to see if he would defend me.' A guilty mind. Thank you."

The complaint made in this appeal does not focus on the denial of the motion for mistrial but rather on the reception of the evidence itself. Appellant urges that it was substantively inadmissible to show consciousness of guilt, which is what the prosecutor clearly used it for in argument, and cannot be justified under the "open door" theory. The State makes no "open door" argument. It insists that (1) the complaint was waived for failure to object below and (2) the evidence *was* admissible to show consciousness of guilt.

■■■ Trooper Prince's injection of this into the case, even if innocent and in good faith, was nonetheless wholly inappropriate. It was clearly outside the scope of the questions put to her and was therefore volunteered. But as

no timely motion was made to strike that part of her testimony, no complaint can be made of it now.

■ The cognizable error came not during the testimony of Trooper Prince but on the cross-examination of appellant. When the prosecutor not only returned to that testimony but demanded that appellant explain *why* he called his lawyer just minutes after involvement in a serious accident, an objection *was* made, and it was overruled. It was *that* question and answer, more than the statements of Trooper Prince, that formed the foundation of the prosecutor's consciousness of guilt argument in this case. The seeds of the argument were in the admission that the call was made to see if the lawyer would "defend me." We find that the complaint was not waived.

We also find the complaint to be valid. Although it does not appear that the Maryland appellate courts have yet had occasion to consider the question, it has been addressed elsewhere, and the rule seems well-established that it is impermissible for the State to offer evidence of, or comment upon, a criminal defendant's obtention of counsel or his attempt, request, or desire to obtain counsel in order to show a consciousness of guilt.

The impermissibility of such comments has rested so far on either of two theories, depending upon the circumstance in which the request for or obtention of counsel arises. Where the desire for counsel is expressed during or in anticipation of a custodial interrogation, adverse comment on it has been regarded as inconsistent with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Some courts have drawn that conclusion directly and more or less uncritically. *See, for example, People v. Kennedy*, 33 Ill.App.3d 857, 338 N.E.2d 414 (1975); *State v. Kyseth*, 240 N.W.2d 671 (Iowa 1976); *Mays v. State*, 495 S.W.2d 833 (Tenn.1972); *People v. Schindler*, 114 Cal.App.3d 178, 170 Cal.Rptr. 461 (1980); *cf. United States v. Williams*, 556 F.2d 65 (D.C.Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977). Others have reached the same

result by extending the principle announced in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle*, the Court noted the *Miranda* requirement that a suspect be informed prior to interrogation of his right to remain silent and held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618, 96 S.Ct. at 2245. As explained in *United States v. Daoud*, 741 F.2d 478, 480 (1st Cir.1984):

"Lower federal courts have extended the Supreme Court's reasoning in *Doyle* to an arrestee's request to secure counsel. The right to counsel is included in the *Miranda* warnings, and as such is covered by the implicit assurance that invocation of the right will carry no penalty. [Citations omitted.]

When the prosecution reveals at trial that a defendant asked for a lawyer after his arrest, courts have looked at all the circumstances under which the disclosure was made in order to determine how seriously in the eyes of the jury it may have penalized defendant's exercise of his right to counsel. Incidental references have not led to reversal....

. . . . .

*Reversal has been ordered, however, when the prosecution has deliberately sought to capitalize on a request for counsel,* as by arguing the defendant must have had something to hide if he needed a lawyer before talking to the police."

(Emphasis added.) *See also United States v. McDonald*, 620 F.2d 559 (5th Cir.1980).

■ Where the request for or obtention of counsel arises in some other circumstance, as in the case at bar, comment on it has been condemned under principles enunciated in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). One of the earliest expressions of this

rule came in *United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir.1973).

Macon had been convicted in a State court proceeding of manslaughter; in the aftermath of a minor traffic accident, he shot and killed one Ralph Sasso. Macon claimed that Sasso had assaulted him and was shot by accident during a struggle. The State produced evidence that, following the shooting, Macon drove off with his friends, warning them to give no statements and take no action until he consulted a lawyer, and that the next morning, prior to his arrest, he called a lawyer. In closing argument, the prosecutor recounted Macon's conduct following the shooting, and asked the jury rhetorically, "He gets up the next morning and lo and behold, what does he do? He calls his lawyer. These are acts of innocence?" *Id.* at 614. None of this, unfortunately, was objected to, and it was essentially on that basis that the New Jersey Supreme Court had denied relief. *See State v. Macon*, 57 N.J. 325, 273 A.2d 1 (1971).

Operating then under the principles of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), which allowed review of Constitutional issues in Federal habeas corpus proceedings even if not preserved under State procedural requirements, the Third Circuit Court of Appeals considered Macon's claim that the prosecutor's statement "sought, or at least may reasonably be expected to have tended, to raise in the minds of the jurors an inference of guilt and, as a result, penalized him for the exercise of his constitutional right to counsel." *Yeager*, 476 F.2d at 615.

The Federal Court took as a given, without discussion, that, at the time he made the call to his lawyer, Macon had and was exercising a Sixth Amendment right to counsel. It drew an analogy then to *Griffin v. California, supra*, 380 U.S. 609, 85 S.Ct. 1229, where the Court had condemned adverse comment on a defendant's exercise of his Fifth Amendment right to remain silent, holding, at 615:

"For the purpose of the 'penalty' analysis [i.e., whether the adverse comment constitutes an impermissible penalty on the exercise of a Constitutional right], however, we

perceive little, if any, valid distinction between the privilege against self-incrimination and the right to counsel. It can be argued, with equal vigor and logical support, as to either the *Griffin* situation or the present case, that a prosecutor's comment seeking to raise in the jurors' minds an inference of guilt from the defendant's constitutionally protected conduct constitutes a 'penalty' on the free exercise of a constitutional right."

Because, in the Court's view, Macon's guilt was not clear cut, it was unable to find the error harmless. *Yeager*, 476 F.2d at 616–17.

For other cases following the *Yeager* approach on this issue, see *United States v. Liddy*, 509 F.2d 428, 444–45 (D.C.Cir.1974), *cert. denied*, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975); *Zemina v. Solem*, 438 F.Supp. 455, 465–66 (D.S.Dak.1977), *aff'd*, 573 F.2d 1027 (8th Cir.1978); *United States v. Gold*, 470 F.Supp. 1336, 1352 (N.D.Ill. 1979); *State v. Blue*, 129 N.J.Super. 8, 322 A.2d 174, 175–76 (1974); and *People v. Meredith*, 84 Ill.App.3d 1065, 40 Ill.Dec. 214, 219–21, 405 N.E.2d 1306, 1311–13 (1980). *Compare State v. Moya*, 138 Ariz. 12, 672 P.2d 964 (App.1983); *People v. Gacy*, 103 Ill.2d 1, 82 Ill.Dec. 391, 468 N.E.2d 1171 (1984); *Jensen v. State*, 482 A.2d 105 (Del.1984).

These cases, as we have indicated, rest on the *a priori* assumption that the request for or obtention of an attorney constituted the exercise of a Sixth Amendment right to counsel. That, of course, was the necessary predicate for the "penalty" analysis borrowed from *Griffin*. What none of them seemed to consider, however, was whether the Sixth Amendment right had in fact attached at the time the request was made or the services of counsel obtained. As pointed out in the Plurality Opinion in *Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972) and confirmed even more definitively in *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the Sixth Amendment

right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against [the defendant] ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment", *Kirby, supra,* 406 U.S. at 689, 92 S.Ct. at 1882 (citations and footnotes omitted), or, as stated in *Moran v. Burbine, supra,* 475 U.S. at 430, 106 S.Ct. at 1146, "when the government's role shifts from investigation to accusation." *See also Lodowski v. State,* 307 Md. 233, 513 A.2d 299 (1986).

This raises the question whether the obtention or attempted obtention of a lawyer or legal advice prior to that point can properly be regarded as the exercise of a right under the Sixth Amendment for purposes of a *Griffin* analysis. The harm, of course, occurs at trial, when the evidence is elicited or the comment is made, and surely at that point, the Sixth Amendment right has attached. But as the harm consists of penalizing the earlier exercise of a Constitutional right, one must look back to the event purporting to constitute the exercise of that right. If in fact, or in law, it does *not* constitute the exercise of a Constitutional right, the whole "penalty" analysis collapses.

In light of the *Kirby, Gouveia, Moulton, Moran* line of cases, the *Yeager* Sixth Amendment analysis would not seem appropriate where the challenged evidence or comment concerns a request for or obtention of counsel or advice prior to the initiation of "adversary judicial proceedings." That does not mean, however, that such evidence or comment is permissible; it is not.

■■■ The right of a person to seek the advice and assistance of counsel is not, of course, restricted to the specific right afforded by the Sixth Amendment or its State counterpart (Maryland Declaration of Rights, art. 21). A person has an independent right, protected we think by the general due process clause of the Fourteenth Amendment and its State counterpart (Maryland Declaration of Rights, art. 24), to seek legal advice or representation at any time, on any

matter, and for any reason. This is especially so when the person perceives that civil or criminal litigation against him may be in the offing, as was surely the case here. Indeed, in *Morris v. State,* 4 Md.App. 252, 254, 242 A.2d 559 (1968), we stated that "an individual in a free society *should be encouraged* to consult with his attorney whose function is to counsel and advise him...." (Emphasis added.) *See also Harrison v. State,* 276 Md. 122, 135, 345 A.2d 830 (1975) (quoting *Morris* ).

 The exercise of this right does not imply a consciousness of guilt. In seeking legal advice or representation, the person may well believe himself culpable of some tortious or criminal conduct. But he may just as well believe himself entirely innocent or only partly culpable, or he simply may not know whether his acts or omissions are in violation of law. And if he has some pre-formed belief as to his culpability or innocence, that belief may turn out to be unfounded. Indeed, common human experience would suggest that, absent some special circumstance not evident here, the most likely purpose for seeking legal advice or representation is to find out what one's status and exposure may be. If there is a rational inference to be drawn from the seeking of such advice or representation therefore, it cannot be more than that—an uncertainty. To draw an inference of consciousness of guilt from the seeking of such advice, then, is both illogical and unwarranted; the fact to be inferred—the consciousness of guilt—is not made more probable (or less probable) from the mere seeking of legal advice or representation, and so evidence of the predicate fact is simply irrelevant. On pure evidentiary grounds, it is inadmissible.

 Although the other evidence adduced against appellant was surely sufficient to justify his convictions, we cannot say (and the State does not allege) that this error was harmless. The judgments must therefore be reversed.

In light of this conclusion, it is not necessary that we address appellant's second complaint. We note only that (1)

the record does clearly reveal that the prosecutor misrepresented to the jury, we expect innocently, certain testimony by Trooper Prince, but (2) the jury was told by the court that argument of counsel was not evidence and that it was to rely on its own recollection of the evidence.

JUDGMENTS REVERSED; CASE REMANDED TO CIRCUIT COURT FOR QUEEN ANNE'S COUNTY FOR NEW TRIAL; QUEEN ANNE'S COUNTY TO PAY THE COSTS.