582 A.2d 260

**Warren A. WADDELL**

v.

**STATE of Maryland.**

**No. 2006, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 28, 1990.

56

Ilene S. Cohen, Assigned Public Defender, Annapolis (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Sarah E. Page, Asst. Atty. Gen., and Stuart O. Simms, State's Atty., on the brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and KARWACKI, JJ.

ALPERT, Judge.

"Those who cannot remember ... past [judicial errors] are condemned to repeat ... [them]." [1] These words of wisdom set the tone for this appeal. Warren A. Waddell (appellant) complains to us about a conviction of first degree murder and the use of a handgun in the commission of

---

**1.** I George Santayana, *The Life of Reason: Or The Phase of Human Progress,* Introduction and Reason in Common Sense 284 (1905).

a violent crime. He contends, *inter alia,* that he was denied a fair trial because the trial court made improper comments suggesting his guilt. We agree that one of the comments potentially was so damaging that it deprived appellant of his right to a fair trial. Consequently, we shall reverse.

## Facts

Appellant and Carlton Robinson were co-workers at the Precision Concrete Company. Early in the morning of November 9, 1988, someone shot Robinson to death in Baltimore City. No one saw the shooting.

Appellant was charged with Robinson's murder and the use of a handgun in the commission of that murder. He was tried by jury in the Circuit Court for Baltimore City on October 24, 1989, the Hon. Elsbeth Bothe presiding. At trial, Robert Kline, the supervisor at Precision Concrete, for Robinson and appellant, testified that the day before he was killed, Robinson had teased and aggravated appellant—calling him a "dickhead"—while they were at work. The comments upset appellant, who then made remarks to the effect that he could "get" Robinson and the others who were teasing him.

Robinson was shot with both copper jacketed and hollow point bullets. A firearms expert testified that the bullets had been fired from a semi-automatic pistol made by any one of seven weapons manufacturers. Two witnesses testified that appellant owned a weapon produced by one of these seven manufacturers and that appellant always loaded his gun with a "mix," *i.e.,* he alternated solid and hollow point bullets when he loaded the gun.

Two police officers, who arrived at the scene within minutes of the dispatcher's call, testified that Robinson was conscious and that he named appellant as the person who shot him. The two paramedics who arrived shortly thereafter testified that Robinson repeatedly said "[H]elp me, I'm dying" and described how "his friend" had shot him.

Other testimony established appellant's behavior after the shooting, *i.e.*, he told the Precision Concrete supervisor that he wanted to get his paycheck "to get out of town" and that he had a passport. Over objection, the court permitted witnesses to testify about appellant's responses to their statements implying that appellant was the killer, including appellant's statements indicating his intent to obtain counsel.

The jury found appellant guilty of first degree murder and the use of a handgun in the commission of a crime of violence. On November 29, 1989, the court sentenced appellant to life imprisonment without the possibility of parole for the murder conviction. The court also imposed a consecutive sentence of 20 years imprisonment for the handgun conviction.

Appellant noted an appeal to this Court on December 13, 1989, asking whether:

I. the trial court's comments suggesting appellant's guilt deprived him of a fair trial;

II. appellant was denied a fair trial because the State offered evidence of his plans to obtain counsel to show a consciousness of guilt;

III. the trial court abused its discretion when it permitted two lay witnesses to identify and to testify on ballistics;

IV. the trial court improperly restricted appellant's cross-examination of two State's witnesses; and

V. the trial court erred when it refused to grant appellant's requested jury instructions.

We shall reverse because of a single remark made by the trial judge which potentially was so damaging that we believe it deprived appellant of the opportunity for a fair trial. We also address the remaining issues to assist the trial court on remand.

### I.

■■ Appellant contends that on innumerable occasions during trial, the trial judge interrupted counsel, questioned witnesses, and interjected comments as to factual matters. Although appellant concedes that "some of these remarks arguably might be considered clarification of counsel's questions, [he argues that] others range far beyond the prerogative of the trial court to aid in the questioning of a witness when counsel's questions are unclear or embarrassing." *See Bell v. State,* 48 Md.App. 669, 677, 429 A.2d 300 (1981). As a result, appellant claims that the judge did not preserve an attitude of impartiality, thereby depriving appellant of his right to a fair trial.

We have carefully considered all of those interruptions, questions, and interjections by the trial judge that appellant has noted in his brief. Although the trial judge sometimes inappropriately asked questions and interjected comments, we do not believe that individually or cumulatively they warrant reversal *save* for the sole comment on which we have decided to reverse. That comment occurred in the following context: The Precision Concrete supervisor, Robert Kline, testified that appellant continued to carry a gun to work even after he had ordered appellant not to do so. On direct examination, the trial judge expressed her disbelief by repeatedly asking questions such as "And you just let him do it?" On cross-examination, defense counsel asked the supervisor why he permitted appellant to come to work if he knew that appellant was armed. The supervisor responded that he was familiar with the area in which appellant lived and understood why appellant might feel the need for protection. Here, the trial judge—in full hearing of the jury—said, *"You know different now."*

As appellant notes in his brief, the meaning of this comment is crystal clear. The judge meant by her remark that Kline now knew that appellant carried the gun for reasons other than just protection, the "indisputable implication" being that appellant had shot and killed Carlton Robinson. We find no other possible construction of the

judge's remark except for this one, which presupposes appellant's guilt.

We have warned this trial judge on at least two prior occasions that she should act with restraint during trial to avoid the appearance of prejudice against the accused. *See McMillian v. State*, 65 Md.App. 21, 499 A.2d 192 (1985), and *Ferrell v. State*, 73 Md.App. 627, 536 A.2d 99 (1988), *rev'd on other grounds*, 318 Md. 235, 567 A.2d 937 (1990). Although we concluded in both *McMillian* and *Ferrell* that the judge's interruptions, comments, and questions were not "tantamount to reversible error," we admonished her for not having "exercised greater restraint." *Ferrell*, 73 Md.App. at 639, 536 A.2d 99; *McMillian*, 65 Md.App. at 27, 499 A.2d 192. We further stated in *Ferrell* that "[w]hen a judge interjects himself or herself into a case to any significant extent, as, despite prior admonitions from this Court, Judge Bothe seems wont to do, he or she invites this kind of argument and risks not only a reversal of the conviction but embarrassing censure as well." *Id.* 73 Md.App. at 638–39, 536 A.2d 99 (citations omitted).

Our admonitions appear to have had little effect. The comment that the judge interjected during the supervisor's testimony was so egregious—so inflammatory as it were—that this time we have no choice but to reverse. Through that comment, the judge clearly implied her belief that appellant shot and killed Carlton Robinson. When she did so, she crossed over the line of impartiality and became an advocate for the State. We think that it was impossible for appellant to have had a fair trial under the circumstances. We hold that the judge's comment suggesting appellant's guilt constituted reversible error and remand the case to the circuit court for a new trial with a different judge.

We now address the remaining issues to assist the trial court on remand.

## II.

Appellant argues that he was denied a fair trial because the State offered evidence of his plans to obtain

counsel to show consciousness of guilt. He contends that occurred during the prosecutor's direct examination of the Precision Concrete supervisor:

[THE PROSECUTOR]: So you told [Waddell] what?

[KLINE]: I told him that I had been called and Carlton [the victim] was shot several times and they said that you were the triggerman.

[THE PROSECUTOR]: And what did Mr. Waddell say to that?

[DEFENSE COUNSEL]: Objection.

[KLINE]: He said he had to go call the, use the phone and call his lawyer.

*   *   *   *   *   *

[THE PROSECUTOR]: So when you confronted Mr. Waddell and he gave his explanation about the gun and said he had to go and make a phone call, was anything else said by you or by him?

[KLINE]: No. Just a few of the men told him—

[DEFENSE COUNSEL]: Objection.

[THE COURT]: Don't tell us what other people told him.

[THE PROSECUTOR]: We just need from you what you said and what Mr. Waddell said.

[KLINE]: All he said [was] he had to go make a call and call his lawyer. Then he was like real scared.

[DEFENSE COUNSEL]: Objection.

[THE COURT]: He can tell us how he acted. But don't tell us what your conclusions are.

We previously addressed this issue in *Hunter v. State,* 82 Md.App. 679, 573 A.2d 85 (1990). In *Hunter,* the defendant was tried and convicted of negligent homicide by motor vehicle while intoxicated, driving while intoxicated, and failure to control vehicle speed to avoid collision. *Id.* at 679, 573 A.2d 85. On defense counsel's cross-examination at trial, the investigating officer injected into her testimony the fact that the defendant called his attorney immediately after the accident. *Id.* at 683, 573 A.2d 85. The prosecutor returned to the matter of the attorney when he cross-exam-

ined the defendant. *Id.* at 684, 573 A.2d 85. After the defendant confirmed that he had called his attorney, the prosecutor asked *why* he had done so. *Id.* The court overruled defense counsel's objection to the question and the defendant responded, "To see if he would defend me." *Id.*

On appeal, the defendant complained that the court erred when it admitted testimony about the defendant's telephone call to his attorney immediately after the accident. *Id.* at 682, 573 A.2d 85. We held that although the officer's testimony was inappropriate and outside the scope of defense counsel's questions—and thus was volunteered—defense counsel made no timely motion to strike that part of her testimony at trial. *Id.* at 685–86, 573 A.2d 85. Thus, the defendant could not later complain of it. *Id.* at 686, 573 A.2d 85. That did not finish the matter, however.

We went on to say that

[t]he cognizable error came not during the [officer's] testimony ... but on the cross-examination of [the defendant]. When the prosecutor not only returned to that testimony but demanded that appellant explain *why* he called his lawyer just minutes after involvement in a serious accident, an objection *was* made, and it was overruled. It was *that* question and answer, more than the statements of ... [the officer], that formed the foundation of the prosecutor's consciousness of guilt argument in this case. The seeds of the argument were in the admission that the call was made to see if the lawyer would 'defend me.'

*Id.* at 686, 573 A.2d 85 (emphasis in original). We found that the defendant did not waive his complaint and that it was a valid one. *Id.*

Although the sixth amendment right to counsel did not protect the defendant because he obtained counsel before any judicial proceedings had begun, *i.e.*, before his sixth amendment right to counsel had attached, *see Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); *see also Hunter*, 82 Md.App. at 689–90,

573 A.2d 85, Judge Wilner noted that such evidence still was impermissible. An individual's right to seek counsel is not limited to the specific right conferred by the sixth amendment or by its state counterpart, the Maryland Declaration of Rights, art. 21. An individual has an independent right "to seek legal advice or representation at anytime, on any matter, and for any reason," *Hunter*, 82 Md.App. at 690–91, 573 A.2d 85, that is protected by the fourteenth amendment due process clause and its state counterpart, the Maryland Declaration of Rights, art. 24.

Judge Wilner then went on to explain for the court that such evidence was irrelevant purely as an evidentiary matter.

> [T]he exercise of this right does not imply a consciousness of guilt. In seeking legal advice or representation, the person may well believe himself capable of some tortious or criminal conduct. But he may just as well believe himself entirely innocent or only partly culpable, or he simply may not know whether his acts or omissions are in violation of law. And if he has some pre-formed belief as to his culpability or innocence, that belief may turn out to be unfounded. Indeed, common human experience would suggest that, absent some special circumstance not evident here, the most likely purpose for seeking legal advice or representation is to find out what one's status and exposure may be. If there is a rational inference to be drawn from the seeking of such advice or representation therefore, it cannot be more than that—an uncertainty. To draw an inference of consciousness of guilt from the seeking of such advice, then, is both illogical and unwarranted; the fact to be inferred—the consciousness of guilt—is not made more probable (or less probable) from the mere seeking of legal advice or representation, and so evidence of the predicate fact is simply irrelevant. On pure evidentiary grounds, it is inadmissible.

*Id.* at 691, 573 A.2d 85.

Thus, our holding that the State may not "offer evidence of, or comment upon, a criminal defendant's obtention of

counsel ... to show a consciousness of guilt" was based on two premises. *Id.* at 686, 573 A.2d 85. First, that the fourteenth amendment due process clause and its State counterpart, Article 24 of the Maryland Declaration of Rights, protects at all times and under all circumstances an individual's right to seek counsel. *Id.* at 690–91, 573 A.2d 85. And second, as a purely evidentiary matter, an individual's exercise of that right is irrelevant because it can only demonstrate that person's uncertainty about his or her legal status and exposure to liability. *Id.* at 691, 573 A.2d 85.

In this case, the State contends that appellant failed to preserve this issue for appellate review because he did not move to strike the supervisor's testimony. Even if preserved, the State argues that this case differs from *Hunter* because "the State did not elicit the contested evidence, nor did the prosecutor attempt to use appellant's intent to call an attorney to show his consciousness of guilt." The State contends that because the witness volunteered the information in response to the general question "And what did Mr. Waddell [appellant] say to that?" that the State did not "offer" the evidence and certainly did not offer it to show consciousness of guilt.

Had the prosecutor in this case ended his inquiry after the witness's first statement, we might be inclined to agree that the witness made the statement in passing. The prosecutor's question arguably was proper in form, and although defense counsel objected to the question, he did not move to strike the answer. The prosecutor, however, did not stop here, but led the witness to repeat his testimony.

An attorney's responsibility for investigating and preparing a case before litigation includes meeting with witnesses and reviewing their testimony before trial. Under the circumstances, the prosecutor simply should not have led the witness to repeat his statement. Because defense counsel made a timely and appropriate objection to the repeated testimony, we find that appellant did not waive his complaint and that it is a valid one.

It is true that the prosecutor in this case did not use the testimony to the same extent that the prosecutor in *Hunter* did to show consciousness of guilt. That is, the prosecutor in this case never asked the supervisor further questions about appellant's statement or raised the issue in closing argument. But, we disagree that absent a direct suggestion from the prosecutor, there was no basis from which the jury could infer that appellant's intent to call a lawyer was evidence of a guilty mind. A juror, even without the prosecutor's suggestive comments, easily might infer from the witness's testimony that appellant planned to obtain counsel because he had done something for which he needed a lawyer to defend him.

Appellant obtained counsel before his sixth amendment right to counsel had attached, *i.e.*, before any judicial proceedings had begun. Like the defendant in *Hunter*, however, appellant had an independent right to seek legal counsel that was protected by the fourteenth amendment due process clause and the Maryland Declaration of Rights, art. 24. *Id.* at 690–91, 573 A.2d 85. The fact that appellant exercised this right does not imply a consciousness of guilt. As Judge Wilner explained in *Hunter*, the only rational inference to be drawn from appellant's exercise of this right immediately after the occurrence is "an uncertainty," not consciousness of guilt. *Id.* at 691, 573 A.2d 85. As an evidentiary matter, the testimony was irrelevant and should not have been admitted into evidence.

We believe that the other evidence against appellant—the fact that after the shooting he no longer carried the handgun which he habitually had worn, that he talked of leaving town and referred to his passport, and that he generally was nervous—was enough to justify his convictions. We cannot say, however, that the admission of the supervisor's testimony into evidence was harmless. We trust that the prosecutor will not repeat this error on remand.

### III.

Appellant complains that the trial court abused its discretion when it permitted two of the State's lay witnesses to testify on ballistics. He contends that occurred on the State's direct examination of two Precision Concrete employees—supervisor Robert Kline and crew worker Carlos Brown.

The supervisor testified that he had seen Waddell carrying a Beretta. The supervisor also indicated that he knew that the gun contained a "mix" of ammunition because he had seen Waddell load the gun alternately with solid point and hollow point bullets. The supervisor identified solid point and hollow point bullets from a State's exhibit and testified that they were similar to those used by Waddell. The only "opinion" that the supervisor offered was the difference between the two types of bullets upon impact, *i.e.*, the solid points remain intact while the hollow points explode.

The crew worker similarly testified that he had seen Waddell carrying a Beretta; further, he knew the gun contained a "mix" of ammunition because he had seen the bullets and because Waddell had told him so. The crew worker likewise identified the solid point and hollow point bullets from the State's exhibit and indicated that they were similar to those Waddell used in his gun.

A lay witness may testify and give an opinion on matters as to which he or she has first-hand knowledge. L. McLain, *Maryland Evidence*, § 602.1, at 22 (1987); *see also Yeagy v. State*, 63 Md.App. 1, 22–23, 491 A.2d 1199 (1985). Furthermore, "[l]ay opinions ... [that] are rationally based and helpful to the trier of fact will be admissible." *McLain*, § 702.1, at 192. The admission of such testimony lies within the trial court's sound discretion. *Yeagy*, 63 Md.App. at 22, 491 A.2d 1199.

At trial, an expert witness explained that ballistics or firearm examination "deals with an examination of a firearm or firearm related evidence. Firearm related evi-

dence ... pertain[s] to anything that has been fired from or ejected from the firearm such as spent bullets, cartridge cases, residue from the bullets or residues from the weapons. The examination of these items are part of a ... forensic curriculum dealt with in any law enforcement agency, [the] scientific examination of these [sic] evidence [is] to tie it in with a specific case."

Neither of the two witnesses claimed that he had examined spent bullets, cartridge cases, or residues in an attempt to connect such evidence with Waddell's gun. Rather, they merely described the gun and ammunition based on their personal observations.

The trial court properly admitted the witnesses' testimony that was based on their firsthand knowledge of Waddell's gun and the ammunition that he used in it. With respect to the supervisor's "opinion" testimony about the difference between the two types of bullets on impact, the trial court admitted that testimony only after it ascertained the supervisor was "apparently familiar with ammunition, at least to the point of telling us about [the two types of bullets that Waddell loaded in his gun]." That is, the supervisor had demonstrated that he could distinguish between the two types of ammunition and stated that he had a familiarity with the ammunition from hunting. The trial court did not abuse its discretion when it admitted the testimony of these two witnesses.

### IV.

Appellant asserts that the trial court improperly restricted him from cross-examining two of the State's witnesses against him, Detective Garvey and crime lab technician Lisa McKelvie.

### A.

Appellant indicated before trial that he wanted to elicit testimony from the detective that a Gerald Parsons had reported seeing a man known as "Black" or "Blackie"

running from the scene of the shooting. Because appellant could not locate Parsons to testify at trial, appellant wanted to elicit Parsons' statements through cross-examination of the detective. The trial court was willing to allow Parsons to testify if located, but would not allow the statements into evidence solely through the detective's testimony.

On direct examination, the detective testified about his contact with appellant when he transported appellant from a Baltimore County precinct to a Baltimore City precinct for charging; he also testified about items seized from appellant at the time of arrest. On cross-examination, the trial court refused to allow appellant to question the detective about the information that Parsons gave him regarding "Black" or "Blackie." The court also held that appellant's requested cross-examination exceeded the scope of direct examination, that it was a "red herring" which would divert the jury's attention, and that it would be too time-consuming.

██ Two established principles of law support the court's exclusion of the detective's testimony from evidence. First, the trial court has the discretion to limit the scope of cross-examination. *Caldwell v. State*, 276 Md. 612, 618, 349 A.2d 623 (1976). On direct examination, the prosecutor elicited testimony only as to the detective's contact with appellant during transport and as to the items found on appellant at the time of arrest. The trial court did not abuse its discretion when it restricted appellant's cross-examination of the detective.

██ The second legal principle that supports the exclusion of this evidence is the hearsay rule. Under the rule, "an out-of-court statement offered for the truth of the matter asserted, and thus resting for its value upon the credibility of the out-of-court [declarant]," is considered to be hearsay and generally is inadmissible unless it falls under a specific exception to the rule. *Cassidy v. State*, 74 Md.App. 1, 6, 8–9, 536 A.2d 666 (1988). Had the trial court permitted appellant to question the detective, appellant

would have elicited what Parsons, the out-of-court declar-
ant, had said to the detective. The trial court properly
excluded the testimony because it did not qualify under one
of the recognized exceptions to the hearsay rule. *Id.* at 9,
536 A.2d 666.

### B.

■ Appellant also contends that the trial court improp-
erly restricted his cross-examination of the crime lab techni-
cian. On direct examination, the technician testified that
she did not take any fingerprints from the scene because
there were no suitable surfaces. On cross-examination,
defense counsel persisted in asking why she had not taken
fingerprints from other surfaces such as the victim's lunch
bucket or wallet. The court cut short appellant's cross-ex-
amination as to the lack of fingerprint evidence.

"[T]rial judges have broad discretion in the conduct of
trials in such areas as the reception of evidence." *McCray
v. State*, 305 Md. 126, 133–34, 501 A.2d 856 (1985) (citations
omitted). In this case, the technician already had testified
on direct examination that she had not taken any finger-
prints. The court permitted appellant to cross-examine the
technician and to question her judgment in so deciding.
Thus, the technician's testimony at the point when the trial
court intervened was sufficient for appellant's purpose of
casting doubt on the police work. The court properly
restricted appellant's cross-examination of the technician.

### V.

Appellant also asks whether the trial court erred when it
refused to grant his requested jury instructions.

■ At trial, the police officers and the paramedics
testified, over objection, about statements that Carlton Rob-
inson made after he was shot. The trial court found that
Robinson's statements were dying declarations and thus
admissible hearsay. At the end of the evidence, appellant
requested that

the court ... give an instruction on a dying declaration and ask the jury to return a verdict as to whether or not they believe that the declaration that was made fits the criteria as to whether or not the victim was aware of pending death and that statements were made by the—

\* \* \* \* \* \*

I think the jury should be able to make the determination as to whether that is a dying declaration and how much weight to give that statement.

The court denied the requested instruction.

Appellant contends that the court should have given the instruction because it was on an area of law central to his case.

"In a criminal case, the only issue for the jury is that of guilt or innocence. Anything that does not bear upon guilt or innocence is utterly foreign to the only task assigned to the jury." *Ehrlich v. State*, 42 Md.App. 730, 738, 403 A.2d 371 (1979). The admissibility of evidence is thus a question within the sole province of the trial court; the jury is not to decide such matters. *Id.* at 737, 403 A.2d 371 (quoting *Hamilton and Fletcher v. State*, 12 Md.App. 91, 98, 277 A.2d 460 (1971)). We find that the trial court properly refused to give appellant's requested instruction. The trial court, not the jury, decides evidentiary matters.

Appellant also contends that the court erred when it gave the jury the following instruction:

Murder in either degree, first or second, is the intentional killing of another human being without excuse, justification or mitigation. There is no evidence in this case that [the victim's] death was caused by any act or excuse, justification or mitigation on the part of the perpetrator so that you need not consider those factors.

Appellant specifically contends that the court erred when it stated that there was no evidence of excuse, justification, or mitigation and that the court should have told the jury the legal meaning of those factors so that it could have deliberated on the issue.

Maryland Rule 4–325(c) permits the court to instruct the jury on the law applicable to a given case. To that end, subsection (d) allows the court to "refer to or summarize the evidence ... to present clearly the issues to be decided." There was no evidence of excuse, justification, or mitigation in the instant case. The trial court, rather than improperly commenting on the absence of such evidence, clarified the instructions for the jurors. The court explained which elements were relevant and should be considered in their deliberations and which elements were irrelevant and should be ignored. The court also told the jury that it was the sole trier of fact. The court's instruction to the jury was correct.

JUDGMENTS REVERSED; REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. THE COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.