Daniel L. BRUNO, Petitioner-Appellee,

v.

Ruth L. RUSHEN, Director, California Department of Corrections, and Paul J. Morris, Warden, California State Prison at Folsom, Respondents-Appellants.

No. 83–1742.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1983.

Decided Dec. 12, 1983.

Dane R. Gillette, San Francisco, Cal., for respondents-appellants.

Michael S. McCormick, San Francisco, Cal., for petitioner-appellee.

Before CHOY and NORRIS, Circuit Judges, and NIELSEN,* District Judge.

PER CURIAM:

I

Daniel L. Bruno was convicted in 1978 of first degree murder and his conviction was affirmed by the California courts. He thereafter petitioned the United States District Court for the Northern District of California for a writ of habeas corpus. He proceeded on two grounds. He charged first that his prosecutor had violated *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) by unfairly disclosing and using the defendant's post-arrest silence to suggest to the jury that the entire defense first related at trial must therefore have been fabricated. He relied on several allegations of prejudicial and impermissible comments by the prosecutor as the second basis for his petition. This court agrees with the district court that the prosecutor's comments were improper and not harmless beyond a reasonable doubt. Therefore, since there is an independent and sufficient basis to affirm the district court's grant of

* The Honorable Leland C. Nielsen, U.S. District Judge for the Southern District of California, sitting by designation.

the writ, we do not reach the claim that *Doyle* error occurred.

## II

In opening arguments before the jury,[1] the prosecutor reviewed the testimony of an important witness for the defense that had repudiated earlier pro-prosecution statements she had given government investigators. He inferred that this sudden reversal at trial in her memory was the direct product of her consultation with the accused's attorney before she took the stand. He returned to this theme in the closing part of his argument.[2] Thus, in hopes of destroying the credibility of her testimony on the stand, the prosecutor had labelled defense counsel's actions as unethical and perhaps even illegal without producing one shred of evidence to support his accusations.

In closing his summation[3] the prosecutor lunged into a vicious attack on the accused's claims of innocence by openly hinting to the jury that the fact that the accused hired counsel was in some way probative of the defendant's guilt. Indeed, the obvious import of the prosecutor's comments was that *all* defense counsel in criminal cases are retained solely to lie and distort the facts and camouflage the truth in an abominable attempt to confuse the jury as to their client's involvement with the alleged crimes. As in the earlier accusation of witness tampering, the prosecutor offered nothing from the evidence adduced at trial

to support his suspicions that defense counsel had agreed for the sake of profit to aid in fabricating a defense. On appeal, the State of California nevertheless attempts to explain away these insinuations and accusations as just "another reasonable interpretation" of the meeting of defense counsel with the witness, and contends that there was no error since the "undisputed testimony of defense counsel's involvement in that meeting and the complete reversal of the witness's memory following it" was "evidence" in the record to support the prosecutor's comments. They also claim that the trial judge's generalized admonition to the jury to only consider what was in evidence adequately cured any prejudice from comments on Bruno's exercise of his right to counsel. In the alternative, they submit that any error was harmless beyond a reasonable doubt. We disagree on the evaluation of error, and find the error not harmless beyond a reasonable doubt.

## III

At the outset, we feel it incumbent on us to note that in no situation in a criminal trial such as this one do we feel the mere act of hiring an attorney is probative in the least of the guilt or innocence of defendants. "[L]awyers in criminal cases are necessities not luxuries," *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963), and even the most innocent individuals do well to retain coun-

1. MR. ROWLAND (Prosecutor): Now, after that statement was given a lot of events started taking place.... All of the sudden lawyers start getting involved in the case. [¶] And the next thing you know the following day when the (witness) comes in to testify, all of a sudden everything got turned around and thats no longer the case.

2. MR. ROWLAND: ... Have you ever seen anything to compare with the machinations? Talk about puppets, talk about malleable, talk about pressure! [¶] That lady was brought down to a lawyer's office across the street from this building that very night, and spoke with the lawyer who represents her daughter (who was living with the defendant at the time of the murder). She spoke with Mr. Serra who represents Mr. Bruno in this case. And what happens? The next day she has a lawyer of her own, recommended by

Mr. Serra. Does that all tell you what happened to that poor lady? What kind of pressures did they exert on her? ....
MR. SERRA: I will object to that. There's no evidence of that.
MR. ROWLAND: I think a reasonable inference can be drawn.—
MR. SERRA: I object.
The COURT: Overruled, this is argument.

3. MR. ROWLAND: ... There is a Judas syndrome at work here and the criminal justice system is the cathedral. And it's been a terrible sight to see it sullied the way it has been during this trial with the most blatant lies. But to complete that Judas syndrome the—the defense is the Judas in this case, and they have betrayed that system and there are thirty pieces of silver, or the $12,000 given over by the defendant to his counsel.

sel. See also, *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932); *Sulie v. Duckworth,* 689 F.2d 128, 131 (7th Cir.1982). Neither is it accurate to state that defense counsel, in general, act in underhanded and unethical ways, and absent specific evidence in the record, no particular defense counsel can be maligned. Even though such prosecutorial expressions of belief are only intended ultimately to impute guilt to the accused, not only are they invalid for that purpose, they also severely damage an accused's opportunity to present his case before the jury. It therefore is an impermissible strike at the very fundamental due process protections that the Fourteenth Amendment has made applicable to ensure an inherent fairness in our adversarial system of criminal justice. *Id.* Furthermore, such tactics unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice and we readily presume because the principle is so fundamental that all attorneys are cognizant of it. Any abridgment of its sanctity therefore seems particularly unacceptable.

■ Even more egregious, however, are attempts by representatives of the government to resort to these reprehensible means to shortcut their responsibility to ferret out all admissible evidence and use only that to meet their burden of proof. We fear resort to such conduct indicates either an absence of sufficient evidence to convict or reflects shoddy government efforts that have failed to unearth admissible evidence. If the former is true, the government attorney has fulfilled his obligation to the People. He has served the twofold aim of justice "that guilt shall not escape or innocence suffer". *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934). That is his highest purpose. He has no obligation to win at all costs and serves no higher purpose by so attempting. Indeed, "[i]t is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one". *Id.*

■ In this case the prosecutor undoubtedly was guided by less than that most exalted of all principles. His insidious attacks on Bruno's exercise of his constitutional right to counsel and his attacks on the integrity of defense counsel were error. *United States v. McDonald,* 620 F.2d 559, 564 (5th Cir.1980).

## IV

■ Because an error of constitutional dimensions occurred, we need only determine now whether it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). See also, *United States v. Valle-Valdez,* 554 F.2d 911, 915 nn. 5–8 (9th Cir.1977).

The improper remarks were made at an important stage of the trial and were extensive. They were not accidental but calculated to wrongly impute guilt to the defendant. These comments "strike at the jugular" of the defendant's story, *United States v. McDonald,* 620 F.2d at 563, and they were not withdrawn upon objection. The cumulative effect of the prejudice can reasonably be regarded as possibly affecting the verdict and thereby denying the defendant a fundamentally fair trial. Accordingly, we find the error not harmless beyond a reasonable doubt, and affirm the grant of the writ of habeas corpus.

AFFIRMED.