COMMONWEALTH of Pennsylvania,
Appellee

v.

Christian COLAVITA, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 28, 2006.
Filed Feb. 27, 2007.
Reargument Denied May 3, 2007.

John J. McMahon, Jr., Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: LALLY–GREEN, GANTMAN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Christian Colavita appeals the order entered on December 16, 2005, in the Court of Common Pleas of Philadelphia County, that denied his first petition brought pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. Upon review, we reverse and remand for a new trial.

¶ 2 The relevant factual and procedural history of this case were set forth fully by the PCRA court, in its opinion filed on May 25, 2006, as follows:

## I. HISTORY

[Appellant] was convicted of Third Degree Murder and [was found] not guilty of Possessing a Criminal Instrument due to the shooting death of Nicole Feehan on December 10, 1999.

[Appellant] and decedent had been dating for a few weeks at the time of the shooting incident. They had been partying together with friends during the early morning hours prior to the date and time of the shooting incident.

In the early morning hours of December 10, 1999, [Appellant] and Feehan had been partying together with friends at the house of Rui DaSilva. Eventually, the couple left and went back to Ms. Feehan's apartment. Shortly thereafter, at approximately 6:00 a.m., Nicole Feehan's roommate, Dan Raz, heard a loud noise sounding like something "falling on the floor," followed by a male's voice, which said, "Oh shit, Nicole, I'm sorry, I'm sorry."[FN1] When Raz left the apartment around 8:00 a.m., Nicole's bedroom door was closed. Upon his return at 8:00 p.m., Nicole's friend Selina was waiting on the outside doorstep ringing the bell, but no one was answering. Raz and Selina entered the apartment and observed the door to Nicole's room open and her body on the floor.

---

[FN1]Detective Joseph Bamberski testified that he conducted a "Voice Line–Up" and that Mr. Raz could not see who was speaking over the intercom, but was able to identify # 5, [Appellant], as the male he heard speaking the night of the killing saying, "Oh shit, Nicole, I'm sorry, I'm sorry."

Nicole Feehan had suffered a single intra-oral gunshot wound to her mouth and had blood splatter on her right hand. No gun was found at the scene. [Appellant's] friends were unable to contact [him] thereafter, and [Appellant] could not be located at his residence. [Appellant's] mother, Mrs. Colavita, testified regarding her conversation on the telephone with her son [on] the morning of the killing. [Appellant] told her that he was going away for the weekend. After several phone calls, her son did not come home for a few weeks. The police arrived the following Monday, and a family friend, Mr. Mineri, told Mrs. Colavita that her son needed a lawyer. When [Appellant] finally returned home, Mrs. Colavita asked her son what was going on, and he replied that he could not talk about it, because his lawyer said not to. [Appellant] owned numerous firearms, often carried a firearm, and has a firearm license. A later search of [Appellant's] residence revealed no firearms and an empty gun case.

Testimony of Rui DaSilva and Paula Fagulha was presented to show that

[Appellant] always carried a gun on his person. Two weeks prior to Feehan's death, DaSilva and Fagulha were both in DaSilva's apartment, along with [Appellant] and Feehan, when [Appellant] took his gun and pointed it toward Feehan's mouth, which startled her. DaSilva took the gun and put it in his safe.[FN2] [Appellant] had many other guns.

_____

[FN2]Paula Fagulha and Rui DaSilva were recalled in rebuttal. They testified that, two weeks prior to this incident, while the group was partying at DaSilva's house, [Appellant] put his gun in Nicole's mouth and that the gun was not in the holster, as [Appellant] had testified. *N.T. 2/27/03, at 174–76; 184–85.*

Officer Avon testified about the crime scene[, and he] stated that the victim was shot in the mouth and that the bullet exited the back of her skull and landed on the dresser with bone fragments. He concluded that the bullet was fired from a semiautomatic weapon. Since no shell casing was found at the scene, he concluded that "someone had removed the casing." He further testified about the blood splatter and lack of residue on [the] decedent's hand, which led to his conclusion that it could not have been a self-inflicted wound. Medical examiner Dr. Edward Leiberman also testified that the decedent's hand was not holding the gun when it was fired inside her mouth. The soot from the gunshot was found inside her mouth. Lacerations on the lips indicated that the gun [discharged] inside her mouth. Toxicology results revealed decedent had a potentially lethal dose of ecstasy, along with cocaine and alcohol in her system.

The defense presented Professor Herbert Leon MacDonald, a Corning, New York Criminologist. He qualified as an expert in Forensic Pathology. He testi-fied that, "I cannot say if it was acciden-tal or a suicide, but, in my opinion, [Fee-han] held the gun as it was fired." Dr. Jonathan Arden, a Medical Examiner from Washington, D.C., was also called by the defense. In his opinion, the muz-zle was inside Feehan's mouth, and, in this case, the mouth was closed at the time the gun was fired. There was no blood splatter on the left hand, but some was found on the right hand. Finally, [Appellant] took the stand and testified that he had joked around with his gun on prior occasions, and, on the night in question, both he and Feehan had been drinking heavily and using cocaine. [Appellant] stated that Feehan took Ec-stasy, and he took a tablet as well, and the two began to kiss on Feehan's bed. [Appellant] customarily put his gun un-der the bed when he and Feehan were together, but, on the date of this inci-dent, Feehan reached under the bed and took out the gun. [Appellant] said Fee-han pointed the gun at him and told him to remove his clothes. He took it from her and removed the bullets from the clip and placed the gun on the floor before turning around to put the bullets in his jacket pocket. When [Appellant] turned back around, he testified that Feehan had the gun, and she said, "[T]his is how I want to suck ..." and put it in her mouth, at which time, the gun went off. [Appellant] drove to New York, disposed of the gun over the side of a bridge, and the next day he met with a lawyer. [Appellant's] testimony was that he did not put the gun in Feehan's mouth, and he did not pull the trigger.

## II. PROCEDURAL HISTORY

Jury selection in [Appellant's] trial ul-timately began before the [trial court] on February 24, 2003. On March 3,

2003, [Appellant] was found guilty of third-degree Murder and acquitted of Possessing an Instrument of Crime. [Appellant] was represented by John McMahon, Esquire, at trial.

On June 18, 2003, [Appellant] was sentenced to seven and a half (7½) to fifteen (15) years incarceration. Post-sentence motions were denied on June 26, 2003. [Appellant] filed a direct appeal, and on July 2, 2004, [this Court] affirmed [Appellant's] Judgment of Sentence.[FN3]

---

[FN3]The sole claim that [this Court] did not address was [Appellant's] ineffectiveness of counsel claim, the same claim that was at issue in [Appellant's PCRA petition].

[Appellant] filed the instant petition for relief on April 4, 2005. After review of the proper statutes, case law, and submissions of the parties, notice of dismissal within (20) days, pursuant to Pa. R.Crim.P. 907 was issued, and, on December 16, 2005, [Appellant's] petition for PCRA relief was dismissed as meritless. This appeal followed.

PCRA court opinion, 5/25/2006, at 5.

¶ 3 In its opinion, the PCRA court stated that it ordered Appellant to file a concise statement of matters pursuant to Pa. R.A.P. 1925(b). Appellant did not file a concise statement. However, a Pa.R.A.P. 1925(b) order, and its concomitant required statement of notice to the parties, do not appear either in the certified record or in the docket statement for this case.[1] Nevertheless, the PCRA court authored an opinion on May 25, 2006, that set forth its rationale for denying Appellant's PCRA petition.

¶ 4 The sole issue Appellant presents for our review is as follows:

Whether trial counsel was ineffective for failing to object to the several references during the prosecutor's opening and closing arguments and cross examination where the prosecutor argued that [Appellant] hired counsel prior to his arrest and that the jury should infer a negative inference from it?

Appellant's brief, at 5.

¶ 5 This Court's standard of review from the grant or denial of post conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error. *Commonwealth v. Morales*, 549 Pa. 400, 408, 701 A.2d 516, 520 (1997). We will not disturb findings that are supported by the record. *Commonwealth v. Yager*, 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) *(en banc), appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997).

¶ 6 Initially, we find that Appellant has filed a timely petition under the PCRA, *see* 42 Pa.C.S.A. § 9545, and has brought ap-

1. In his reply brief, Appellant provided a copy of a computer-generated docket sheet indicating that a Pa.R.A.P.1925(b) order was issued by Judge Cohen on September 20, 2006. Nevertheless, Judge Cohen was not the judge assigned to this case, and the PCRA court's opinion, authored by Judge Poserina, indicates that it issued the order on January 12, 2006. More importantly, as stated above, the certified record does not contain a Pa.R.A.P. 1925(b) order from the PCRA court to Appellant or an indication that notice of the order was sent to Appellant. Likewise, Appellant avers that present counsel never received such an order or notice of its entry. Therefore, we will not penalize Appellant for his failure to file a Pa.R.A.P.1925(b) statement. *Commonwealth v. Davis*, 867 A.2d 585 (Pa.Super.2005). As the PCRA court filed an opinion addressing the sole issue Appellant presented in his PCRA petition and that he presents on appeal for our review, we need not remand to allow Appellant to file a proper Pa.R.A.P.1925(b) concise statement and, thereafter, for the PCRA court to file an opinion.

peal to this Court in a timely manner, *see* Pa.R.A.P. 903(a). We must now determine whether Appellant raises any cognizable claims under the PCRA to make him eligible for collateral relief.

¶ 7 A petitioner is eligible for collateral relief if the petitioner pleads and proves by a preponderance of the evidence:

    (1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

        (i) currently serving a sentence of imprisonment[.]

            \* \* \*

    (2) That the conviction or sentence resulted from one or more of the following:

            \* \* \*

        (ii) Ineffective assistance of counsel, which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S.A. §§ 9543(a)(1), (2).

¶ 8 Appellant is serving a sentence of incarceration in a state correctional facility due to his murder conviction, and, therefore, he is eligible for PCRA relief. Moreover, Appellant's attack upon the efficacy of trial counsel is cognizable under the rubric of the PCRA. *See* 42 Pa.C.S.A. §§ 9543(a)(2)(ii), (vii).

¶ 9 Next, we consider whether Appellant's cognizable claim has been litigated previously or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). Appellant's claim has not been previously litigated or waived because he has complied with the rule announced in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), by presenting his claim of ineffectiveness for the first time in a PCRA petition.[2]

¶ 10 Our standard of review for ineffective assistance of counsel claims is as follows:

    To prevail on an [ineffective assistance of counsel] claim, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probabili-

---

**2.** The Commonwealth presents an argument that Appellant's claim has been litigated previously because of our cursory discussion of the underlying merits of Appellant's present ineffectiveness claim on direct appeal. An appellate court's discussion of unnecessary alternative grounds for its decision is *dicta* and may be disregarded in a subsequent case. *See Commonwealth v. Hennigan*, 753 A.2d 245, 258 (Pa.Super.2000). Further, as our Supreme Court has held, a claim of ineffectiveness is an issue that is distinct from the underlying issue and is not "previously litigated" simply because that issue failed on its own merits on direct appeal. *See Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564 (2005). As this Court never reached Appellant's underlying issue on direct appeal because of trial counsel's failure to object at trial (necessitating his presentation of the is-

sue as an attack on trial counsel's efficacy in an attempt to avoid waiver), our discussion of the underlying issue was *dicta*. *Hennigan*, 753 A.2d at 258. Moreover, had the issue been presented properly on its own (without reference to trial counsel's ineffectiveness), such presentation and review, standing alone, would not render the claim "previously litigated." *Collins*, at 61, 888 A.2d at 573. Rather, in such a situation, the issue would, in all likelihood, fail due to the "arguable merit" prong of the ineffectiveness analysis. *Id.*, at 61, 888 A.2d at 573. However, as this Court did not review the merits of Appellant's underlying argument on direct appeal, we need not comment further on this subject, and we will review the merits of Appellant's ineffectiveness claim. Therefore, we reject the Commonwealth's argument.

ty that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Manuel,* 844 A.2d 1, 7 (Pa.Super.2004).

■ ¶ 11 Appellant asserts that trial counsel was ineffective for failing to object during the Commonwealth's opening argument when the Commonwealth stated the following:

> [...]. And the testimony may be hard to hear from [Appellant's] own mother [who] will say Sunday morning, Saturday night, rather, right after the murder she gets a phone call from a relative. Based on the conversation she has with this relative in New York, she sees her son in a lawyer's office on Sunday morning in New Jersey, on Sunday morning.
>
> [Feehan's] murdered Friday morning. 48 hours later, [Appellant's] in a lawyer's office. She doesn't discuss the case with him. She's not allowed to. But he's got a lawyer already. No phone calls are ever made to [Appellant's] cell phone letting him know what happened, but he's got a lawyer somehow.

N.T. trial, 2/25/2003, at 45–46.

¶ 12 Appellant asserts that the aforementioned statement made by the Commonwealth violated his rights under the Constitution of the United States.[3] Appellant cites *United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3rd Cir.N.J.1973), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973), as authority for his position.

¶ 13 In *Macon,* Isiah Macon sought *habeas corpus* review of a New Jersey manslaughter conviction. *Macon,* 476 F.2d at 613. The conviction arose from an altercation that took place following a minor traffic accident involving Macon, Ralph Sasso, and their respective friends, which ended with Macon shooting and killing Sasso. *Id.,* 476 F.2d at 613. The evidence presented at trial was conflicting; the state's version of events indicated that Macon shot Sasso with little provocation, and Macon's version of events was that he shot Sasso accidentally during a fight. *Id.,* 476 F.2d at 613. After the incident, Macon and his friends drove away, and Macon instructed them to give no statements and to take no action until he had consulted his attorney. *Id.,* 476 F.2d at 613. Macon testified that, when alone, he drove around aimlessly, threw the gun out the car window, parked his car in a place he could not recall, walked home, put his blood-stained shirt away, went to bed, and the next morning telephoned his lawyer. *Id.,* 476 F.2d at 613. Thereafter, Macon was arrested and tried for criminal homicide. *Id.,* 476 F.2d at 613.

¶ 14 At the conclusion of trial, the prosecution argued, without objection, that Macon displayed consciousness of guilt due to his consultation of an attorney following the shooting. *Id.,* 476 F.2d at 613. His case proceeded through the New Jersey state court system, and, ultimately, the New Jersey Supreme Court affirmed his conviction but lessened the length of his sentence. *Id.,* 476 F.2d at 613. Thereafter, Macon sought *habeas corpus* review in the New Jersey Federal District Court, asserting that the prosecutor's statement about his pre-arrest call to his lawyer penalized the exercise of his Sixth Amend-

---

**3.** Although Appellant asserts that his rights under both the federal and state constitutions were violated, because we grant Appellant relief under the federal constitution for the reasons set forth *infra,* we will confine our analysis to the federal issue only.

ment right to counsel, as applied to the states through the Fourteenth Amendment. *Id.,* 476 F.2d at 615. The District Court denied Macon's petition for writ of *habeas corpus. Id.,* 476 F.2d at 613. Macon then appealed to the Third Circuit Court of Appeals. *Id.,* 476 F.2d at 613.

¶ 15 On review, the Third Circuit reversed the District Court. *See Macon,* 476 F.2d at 616. The Court began its analysis of Macon's Sixth Amendment issue with a discussion of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), wherein the United States Supreme Court held that the **Fifth** Amendment right against self-incrimination, as applied to the states *via* the Due Process Clause of the Fourteenth Amendment, precluded a state prosecutor from making the argument that a jury should draw a negative inference from a defendant's failure to take the stand in his own defense. *See Griffin,* 380 U.S. at 614, 85 S.Ct. 1229. The United States Supreme Court deemed the use of the statement in that fashion to be "a penalty imposed by the courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.,* 380 U.S. at 614, 85 S.Ct. 1229.

¶ 16 Analogizing *Griffin* to the case before it, the Third Circuit concluded that, for purposes of analyzing whether a defendant was "penalized" for engaging in constitutionally-protected conduct, there was no meaningful distinction between the right against self-incrimination and the right to counsel in criminal proceedings. *See Macon,* 476 F.2d at 615. The Third Circuit concluded that such analysis requires a court to determine whether the particular *defendant* was *harmed* by the state's use of the fact that he engaged in constitutionally-protected conduct, not whether, for the particular defendant or for persons generally, the state's reference

to such activity has or will *burden* the exercise of a constitutional *right. Id.,* 476 F.2d at 616 (emphasis in original). Therefore, applying the aforementioned analysis, the Third Circuit concluded that constitutional error arose from the prosecutor's argument to the jury that Macon was conscious of his guilt because he consulted with an attorney before his arrest. *Id.,* 476 F.2d at 616. Inasmuch as the central issue for the jury was the credibility of the witnesses, including Macon, who took the stand in his own defense, and because the other evidence was not so overwhelming by comparison that the constitutional error could not have contributed to the verdict, the Third Circuit concluded that the error was not harmless. *Id.,* 476 F.2d at 616. Consequently, the Third Circuit reversed the District Court and remanded the case. *Id.,* 476 F.2d at 616.

¶ 17 We begin with the observation that decisions by the Third Circuit interpreting questions regarding **federal** constitutional rights are not binding on this Court, but they are highly persuasive and should be followed where the decisions are sound logically and where the United States Supreme Court has not ruled on the issue. *See Commonwealth v. Gaffney,* 702 A.2d 565, 567–68 (Pa.Super.1997), *affirmed by,* 557 Pa. 327, 733 A.2d 616 (1999). The principle espoused in *Macon, i.e.,* that a prosecutor cannot argue that a defendant's constitutionally-protected conduct supports an inference of his guilt, has been adopted by other federal circuit courts. *See, e.g., Bruno v. Rushen,* 721 F.2d 1193 (9th Cir. 1983); *accord United States v. McDonald,* 620 F.2d 559 (5th Cir.1980). We agree with the principle espoused in *Macon,* and, therefore, we will apply *Macon* to the present case. However, unlike the Third Circuit, we do not base our holding on the Sixth Amendment. Indeed, the "right to counsel" does not attach until the initiation of adverse judicial proceedings, which had

not occurred at the time when Appellant first retained counsel in this case. *See Commonwealth v. Bomar,* 573 Pa. 426, 449, 826 A.2d 831, 844 (2003).[4]

¶ 18 We find the following rationale of the Ninth Circuit Court of Appeals in *Bruno* to be the appropriate basis for our decision:

> [. . .] *in no situation in a criminal trial such as this one do we feel the mere act of hiring an attorney is probative in the least of the guilt or innocence of defendants. Lawyers in criminal cases are necessities not luxuries, and even the most innocent individuals do well to retain counsel.* Neither is it accurate to state that defense counsel, in general, act in underhanded and unethical ways, and absent specific evidence in the record, no particular defense counsel can be maligned. *Even though such prosecutorial expressions of belief are only intended ultimately to impute guilt to the accused, not only are they invalid for that purpose, they also severely damage an accused's opportunity to present his case before the jury. It therefore is an impermissible strike at the very fundamental due process protections that the Fourteenth Amendment has made applicable to ensure an inherent fairness in our adversarial system of criminal justice.* Furthermore, such

tactics unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice and we readily presume because the principle is so fundamental that all attorneys are cognizant of it. Any abridgment of its sanctity therefore seems particularly unacceptable.

*Bruno,* 721 F.2d at 1194 (citations and quotation marks omitted; emphasis added). In passing on the same question, the Seventh Circuit Court of Appeals held that a reference by a prosecutor to a suspect's pre-arrest decision to retain counsel draws into question rights secured by the Due Process Clause of the Fourteenth Amendment itself, despite the fact the Sixth Amendment attaches only at the initiation of adverse judicial proceedings against the defendant. *See Dean v. Young,* 777 F.2d 1239, 1242–43 (7th Cir.1985).

¶ 19 Given the facts of this case, the tenor of the Third Circuit's decision in *Macon,* and the reasoning of the other federal circuit courts, we conclude that the Commonwealth's conduct in this case was so fundamentally unfair as to violate the Due Process Clause of the Fourteenth Amendment. *See, e.g., Commonwealth v. Fant,* 480 Pa. 586, 593, 391 A.2d 1040, 1044 (1978) (where Commonwealth's action was so fundamentally unfair that it tainted fairness of trial, Due Process Clause was violated); *cf. Bomar,* at 451, 826 A.2d at 846

---

**4.** Our holdings with regard to this point of law follow the holdings of the United States Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality), and *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). *Kirby,* a plurality decision, held that the right to counsel does not attach until the moment that adverse judicial proceedings are instituted against the defendant. *See Kirby,* 406 U.S. at 688, 92 S.Ct. 1877. This holding was affirmed explicitly by a majority of the United States Supreme Court in *Gouveia,* 467 U.S. at 189, 104 S.Ct. 2292. Addi-

tionally, the *Gouveia* Court noted that several cases following *Kirby* confirmed that the right to counsel contained in the Sixth Amendment does not attach until institution of an adversary proceeding. *Gouveia,* 467 U.S. at 188, 104 S.Ct. 2292, citing *Estelle v. Smith,* 451 U.S. 454, 469–470, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Moore v. Illinois,* 434 U.S. 220, 226–227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Brewer v. Williams,* 430 U.S. 387, 398–399, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (opinion of Burger, C.J.).

(notion of offensive or outrageous governmental conduct, not involving seizure, sounds under due process clause of 14th Amendment, not 4th Amendment); *accord Macon*, 476 F.2d at 616; *Bruno*, 721 F.2d at 1194; *Young*, 777 F.2d at 1242–43. To explicate, at the heart of *Macon* was the Third Circuit's concern with a state's use of ***constitutionally-protected conduct*** as the basis for its argument in support of a defendant's conviction. *See Macon*, 476 F.2d at 616. Certainly, the concept of "fundamental fairness" inherent in the Due Process Clause of the Fourteenth Amendment protects a defendant's choice and ability to retain counsel before arrest. *See, e.g., Bruno*, 721 F.2d at 1194; *Cf. McDonald*, 620 F.2d at 563–64 (reversing federal conviction for conspiracy and counterfeiting where, at trial, prosecutor sought to raise negative implication during closing argument by making reference to defendant's hiring of an attorney to be present at his residence during search of residence by federal agents).

¶ 20 One who hires an attorney to defend him in a criminal matter is, of course, clothed with the presumption of innocence, until the Commonwealth meets its burden to prove beyond a reasonable doubt that the individual committed the crime. *See Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Therefore, the simple fact of an arrest for a given offense does not alter the presumption of innocence. *Cf. Commonwealth v. Cabeza*, 300 Pa.Super. 483, 446 A.2d 958, 959 (1982) (fact of arrest cannot be used to prove criminal character because arrest is equally consistent with innocence as well as guilt). Consequently, it would be patently absurd to permit argument at trial allowing a negative inference of consciousness of guilt to be drawn when one under suspicion of committing a crime but, nevertheless, clothed with the presumption of innocence, hires an attorney prior to being arrested, presumably to ward off an offense being charged, or to defend him at trial for an impending charge and, yet, in the same vein, to forbid such argument if the defendant has already been arrested.

■ ¶ 21 The Commonwealth argues that its discussion of Appellant's pre-arrest retention of an attorney was a permissible "fair comment" on the evidence. It is correct that a prosecutor may, when responding to a defendant's argument, comment on a defendant's pre-arrest silence or post-arrest silence and not run afoul of the defendant's ***Fifth*** Amendment right against self-incrimination. *See, e.g., Commonwealth v. DiNicola*, 581 Pa. 550, 559–61, 866 A.2d 329, 334–36 (2005) (discussing "fair comment" and impeachment exceptions to Fifth Amendment). As discussed above, our concern lies with Appellant's Fourteenth Amendment Due Process rights, not his Fifth Amendment rights. Nevertheless, this is not a case where the Commonwealth could argue that it was merely responding to Appellant's argument through "fair comment." The record indicates that the Commonwealth presented the issue of Appellant's pre-arrest consultation with an attorney in its opening statement, which, of course, took place before Appellant's opening statement or the presentation of his case-in-chief. Therefore, we reject the Commonwealth's argument that its argument to the jury was merely "fair comment" on an issue presented by Appellant. It is correct that Appellant responded to the Commonwealth's argument in his opening statement in order to lessen its impact, but we will not find "fair comment" where the Commonwealth places the objectionable argument to the jury before a defendant. *See Macon*, 476 F.2d at 616. Therefore, we are satisfied that Appellant's argument has arguable merit, and we will proceed to a discussion of the basis of trial counsel's actions.

¶ 22 The Commonwealth argues that Appellant either waived or failed to prove that trial counsel's failure to object to the Commonwealth's opening statement lacked a reasonable basis. First, the Commonwealth asserts that trial counsel was not listed as a witness in conformity with 42 Pa.C.S.A. § 9545(d)(1) (regarding PCRA evidentiary hearings), and, as such, the issue is waived. We disagree with this argument. First, to merit entitlement to an evidentiary hearing on a claim of ineffectiveness, a defendant must set forth an offer to prove sufficient facts at an appropriate hearing upon which a reviewing court can conclude that counsel was, in fact, ineffective. *See Commonwealth v. Priovolos*, 552 Pa. 364, 368–69, 715 A.2d 420, 422 (1998). The allegations set forth in Appellant's PCRA petition and the record of trial constitute a sufficient offer of proof for the PCRA court. Secondly, Section 9545(d)(1) requires only "substantial conformity" with its provisions to permit a witness to testify at a PCRA hearing. Appellant's sole issue was an allegation of trial counsel's ineffectiveness, whereupon he requested an evidentiary hearing or the grant of relief. The sole relevant evidence at the hearing would have been trial counsel's testimony on this issue.

¶ 23 In any event, we conclude that this is one rare instance where the record, viewed alone, demonstrates that trial counsel's actions had no reasonable basis. We liken this case to one where trial counsel failed to object to an impermissible reference to a defendant's *post-arrest* silence. In those instances, the appellate courts of this Commonwealth have been very willing to find the lack of a reasonable basis for counsel's action or inaction on the face of the record, without discussion of possible strategies by trial counsel. *See, e.g., Commonwealth v. Costa*, 560 Pa. 95, 742 A.2d 1076 (1999). We perceive little distinction between those cases and the present case, because, in the present case, trial counsel's failure to object and request a curative instruction or mistrial left the jury with the belief that it could infer Appellant's guilty conscience by virtue of his consultation with counsel, *i.e.*, a fundamentally unfair argument violating the Due Process Clause, and in the post-arrest silence cases, the defendant was penalized for exercising a constitutional right guaranteed to the states by the Due Process Clause.[5] Therefore, we conclude that trial counsel's actions lacked a reasonable basis.

¶ 24 Lastly, we must consider whether Appellant suffered prejudice as a result of trial counsel's failure to object to the Commonwealth's opening statement. This case was contested hotly at trial by Appellant and the Commonwealth. The scientific expert testimony presented by both the Commonwealth and Appellant were in direct conflict with each other. The only eyewitness to the victim's death was Appellant, who took the stand in his own defense. Therefore, in the main, the Commonwealth's evidence against Appellant was circumstantial and required the jury

5. At this point, we must emphasize that we are not expanding a defendant's pre-arrest rights, and we are not expanding the time when the right to counsel attaches. In this case, we are presented with a situation wherein a person, concerned with the state of his legal affairs, sought out counsel prior to a possible impending arrest and, at trial, was penalized for this activity through the Commonwealth's argument. Such activity by the Commonwealth does not assist the efficient administration of justice; to the contrary, it frustrates the efficient administration of justice. *Bruno*, 721 F.2d at 1194. Therefore, our conclusions with regard to the Due Process violations that took place in this case do not expand a defendant's pre-arrest rights, they merely enforce a person's ability *to seek and hire* counsel prior to arrest without fear that the pre-arrest retention of counsel will be utilized as evidence demonstrating his guilt.

to draw inferences from Appellant's conduct at the time the incident took place. Therefore, as was the case in *Macon,* the credibility of the witnesses, including Appellant, was crucial to the jury's verdict. *Macon,* 476 F.2d at 616. Consequently, if Appellant's counsel had objected to the Commonwealth's argument regarding the inference the jury should draw from Appellant's pre-arrest consultation with counsel, it is clear that the argument (including the subsequent testimony used to prove the argument) would not have infected the trial, and it is also likely that the jury would have reached a different verdict. *Id.,* 476 F.2d at 616; *see also Commonwealth v. McClellan,* 887 A.2d 291, 302–03 (Pa.Super.2005) (prejudice prong of ineffective assistance analysis requires showing that, but for the errors of counsel, the jury would have likely reached a different verdict). Therefore, we reverse the order of the PCRA court, vacate Appellant's judgment of sentence, and remand the case for a new trial.

¶ 25 Order reversed. Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

